# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

RUTHELLE FRANK, SHIRLEY BROWN, NANCY LEA WILDE, EDDIE LEE HOLLOWAY, JR., MARIANNIS GINORIO, FRANK YBARRA, SAM BULMER, PAMELA DUKES, CARL ELLIS, RICKIE LAMONT HARMON, DARTRIC DAVIS, BARBARA ODEN, DEWAYNE SMITH, SANDRA JASHINSKI, JUSTIN LUFT, ANNA SHEA, MATTHEW DEARING, MAX KLIGMAN, SAMANTHA MESZAROS, STEVE KVASNICKA, SARAH LAHTI, DOMONIQUE WHITEHURST, EDWARD HOGAN, ANTHONY JUDD, AND ANTHONY SHARP, on behalf of themselves and all others similarly situated,

               Plaintiffs,

v.

SCOTT WALKER, in his official capacity as Governor of the State of Wisconsin, et al.,

               Defendants.

Civil Action No. 2:11-cv-01128 (LA)

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Ruthelle Frank, Shirley Brown, Nancy Lea Wilde, Eddie Lee

Holloway, Jr., Mariannis Ginorio, Frank Ybarra, Sam Bulmer, Pamela Dukes, Carl

Ellis, Rickie Lamont Harmon, Dartric Davis, Barbara Oden, DeWayne Smith,

Case 2:11-cv-01128-jdp   Filed 03/02/12   Page 1 of 79   Document 31

Sandra Jashinski, Justin Luft, Anna Shea, Matthew Dearing, Max Kligman, Samantha Meszaros, Steve Kvasnicka, Sarah Lahti, Domonique Whitehurst, Edward Hogan, Anthony Judd, and Anthony Sharp (collectively, "Plaintiffs"), who are eligible Wisconsin voters, bring this action to protect their rights, and the rights of all other similarly situated Wisconsin residents, to vote under the United States Constitution and the Voting Rights Act. Wisconsin's voter identification law, 2011 Wisconsin Act 23 ("the photo ID law" or "Act 23"), will deprive the named plaintiffs above and the classes of voters they represent of their fundamental right to vote.

Plaintiffs, through their undersigned counsel, bring this Complaint against Defendant Scott Walker ("Defendant Walker"), in his official capacity as Governor of the State of Wisconsin; Judge David G. Deininger in his official capacity as Chair of the Wisconsin Government Accountability Board ("GAB"); Judge Michael Brennan, in his official capacity as Vice Chair of the GAB; Judge Thomas Barland, in his official capacity as a member of the GAB; Judge Thomas Cane, in his official capacity as a member of the GAB; Judge Gerald C. Nichol, in his official capacity as a member of the GAB; Kevin J. Kennedy, in his official capacity as Director and General Counsel of the GAB; Nathaniel E. Robinson, in his official capacity as Administrator of the Elections Division of the GAB ("the GAB Defendants"); Defendant Mark Gottlieb, in his official capacity as Secretary

of the Wisconsin Department of Transportation ("WisDOT"); Defendant Lynne Judd ("Defendant Judd"), in her official capacity as the Administrator of the Division of Motor Vehicles ("DMV") at WisDOT; Defendant Kristina Boardman, in her official capacity as the Director of the Bureau of Field Services at the DMV; Defendants Donald D. Reincke and Tracy Jo Howard, in their respective official capacities as Region Manager and Region Operational Manager of the DMV Bureau of Field Services office for the Southwest Region; Defendants Sandra M. Brisco and Barney L. Hall in their respective official capacities as Region Manager and Region Operational Manager of the DMV Bureau of Field Services office for the Southeast Region; Defendant Donald J. Genin in his official capacity as Region Manager of the DMV Bureau of Field Services office for the Northeast Region; Defendant Jill Louise Geoffroy in her official capacity as Region Manager of the DMV Bureau of Field Services office for the North Central Region; and Defendant Patricia A. Nelson in her official capacity as Region Manager of the DMV Bureau of Field Services office for the Northwest Region ("the DMV Defendants") (collectively, "Defendants").  Plaintiffs allege upon knowledge as to their own conduct and observations and upon information and belief as to the conduct of others:

3

## NATURE OF THE ACTION

1.  This action seeks declaratory and injunctive relief against Wisconsin state officials' enforcement of 2011 Wisconsin Act 23 (the "photo ID law"), which requires voters in Wisconsin to present photo identification in order to cast their votes either in person at a polling place or by absentee ballot. This requirement went into effect on February 21, 2012, the date of Wisconsin's spring primary.

2.  This lawsuit seeks a declaratory judgment that the photo ID law is unconstitutional as applied to certain classes of eligible Wisconsin voters and to enjoin its enforcement with respect to these classes. It also seeks a declaratory judgment that the photo ID law violates Section 2 of the Voting Rights Act and an injunction as applied to Milwaukee County, Wisconsin and the State of Wisconsin. The photo ID law imposes a severe and undue burden on the fundamental right to vote under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; violates the Twenty-Fourth and Fourteenth Amendments to the United States Constitution as an unconstitutional poll tax; violates the Equal Protection Clause of the Fourteenth Amendment in arbitrarily refusing to accept certain identification documents; and violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, due to its disproportionate negative impact on minority voters in Milwaukee County, Wisconsin and in the State of Wisconsin.

Case 2:11-cv-01128-jdp   Filed 03/02/12   Page 4 of 79   Document 31

## PARTIES

3.  Each of the plaintiffs named in this Complaint is a citizen of the United States, a resident of the State of Wisconsin, and is a duly qualified elector eligible to vote in local, state, and federal elections in Wisconsin. Every United States citizen age 18 or older who has resided in an election district or ward in the State of Wisconsin for 28 consecutive days before any election where the citizen offers to vote is an eligible elector (hereinafter, "eligible Wisconsin voter"). Wis. Stat. § 6.02(1).

4.  Plaintiff Ruthelle Frank is an 84-year-old Caucasian resident of Brokaw, Wisconsin, where she has served on the Village Board since 1996, and an eligible voter registered to vote in Wisconsin. She has no accepted form of photo ID under the photo ID law and has never had a Wisconsin driver's license or Wisconsin state ID card. Mrs. Frank was born at her home in Brokaw in 1927. Though she has never possessed a copy of her birth certificate, upon information and belief, the state Register of Deeds has a record of her birth and could produce a certified copy of her birth certificate at a charge. However, that record bears an incorrect spelling of her maiden name and her parents' names. She was informed that amending her birth certificate would require a legal proceeding which could be lengthy and cost as much as $200. The DMV office would not accept her baptismal certificate and did not inform Mrs. Frank of any alternative procedure to satisfy this requirement.

5

She has voted consistently since 1948 and wishes to vote in Wisconsin again this year.

5. Plaintiff Shirley Brown is a 73-year-old African-American resident of Milwaukee, Wisconsin and an eligible voter. She has no accepted form of photo ID under the photo ID law and has never had a Wisconsin driver's license or Wisconsin state ID card. Ms. Brown lacks a certified copy of her birth certificate. Ms. Brown was born in Louisiana at home by midwife and, upon information and belief, there is no record of her birth on file with the Louisiana Department of Health and Hospitals ("DHH") Vital Records Registry. Furthermore, when Ms. Brown sought confirmation from the DHH Vital Records Registry in Louisiana that no birth record existed, the agency inexplicably sent her a birth certificate for her sister, June Rose Brown, who is about four years younger. The DMV office Ms. Brown visited when trying to obtain an ID did not inform her of any alternative procedure to satisfy its documentary proof requirements. Ms. Brown wishes to vote in Wisconsin this year.

6. Nancy Lea Wilde is a 74-year-old Caucasian resident of Schofield, Wisconsin and an eligible and registered voter. She has no accepted photo ID under the photo ID law and has never had a Wisconsin driver's license or state ID card. Mrs. Wilde lacks a certified copy of her birth certificate which she needs to prove her citizenship to the Wisconsin DMV. Instead, Mrs. Wilde possesses a

hospital certificate of her birth and a baptismal certificate. Mrs. Wilde was born in Wausau, Wisconsin, but both the Marathon County, Wisconsin Register of Deeds and the Wisconsin Vital Records Office in Madison, Wisconsin have informed Mrs. Wilde that there is no record of her birth on file. About two years ago, the DMV office in Wausau denied her a state ID card, since she could not present a certified copy of her birth certificate. Recently, in response to further inquiry, a DMV employee called Mrs. Wilde and informed her that she could secure a certification from the Wisconsin Vital Records Office that there is no record of her birth and use her hospital and baptismal certificates instead to obtain a state ID card. However, DMV never provided her with the forms to use or gave her clear instructions on how to proceed. Mrs. Wilde has voted consistently since 1957 and intends to vote in Wisconsin again this year.

7. Plaintiff Eddie Lee Holloway, Jr. is an African-American resident of Milwaukee, Wisconsin and an eligible and registered voter. He has no accepted form of photo ID under the photo ID law and has never had a Wisconsin driver's license or Wisconsin state ID card. Mr. Holloway, Jr. lacks an accurate and certified copy of his birth certificate. Mr. Holloway, Jr. was born in Decatur, Illinois. His father's name was "Eddie Lee Holloway," and his parents gave him the name "Eddie Lee Holloway, Jr." However, his birth certificate, which Mr. Holloway, Jr. possesses, bears the name "Eddie Junior Holloway." His Social

Security Card and expired Illinois state ID card both bear the name "Eddie L Holloway Jr". When he tried to obtain an ID, the DMV office denied his application because of the discrepancies between his birth certificate and other documents, and did not inform him of any alternative procedure to satisfy its proof requirements. He has been informed that the legal proceeding needed to amend his birth certificate would cost him hundreds of dollars. Mr. Holloway, Jr. is unemployed due to disability and cannot afford the expense of seeking an amendment to his birth certificate. Mr. Holloway, Jr. wishes to vote in Wisconsin this year.

8. Plaintiff Mariannis Ginorio is a 19-year-old Hispanic/Latino resident of Milwaukee, Wisconsin and an eligible voter. She has no accepted form of photo ID under the photo ID law and has never had a Wisconsin driver's license or Wisconsin state ID card. Ms. Ginorio was born in Puerto Rico and has a birth certificate that was issued prior to July 1, 2010, when Puerto Rico began issuing new birth certificates pursuant to Law 191 of 2009 as Amended. In accordance with Puerto Rican law, the Wisconsin DMV has deemed all certified copies of birth certificates issued prior to July 1, 2010 invalid for purposes of proving U.S. citizenship at a Wisconsin DMV office. Additionally, because she does not have current government-issued photo identification, Ms. Ginorio cannot meet the application requirement to obtain a certified copy of the new birth certificate from

Puerto Rico. Ms. Ginorio also has limited income from her employment and numerous bills to pay, so that applying for a birth certificate will be a financial burden. Ms. Ginorio wishes to vote in Wisconsin this year.

9. Plaintiff Frank Ybarra is a 59-year-old Hispanic/Latino resident of Milwaukee, Wisconsin and an eligible voter. Many years ago, he had a driver's license and state photo ID card issued by the State of Wisconsin, but Mr. Ybarra currently has no accepted form of photo ID under the photo ID law. Mr. Ybarra was born in Milwaukee, but lacks a certified copy of his birth certificate and lacks the documents that are normally required by Wisconsin to obtain a birth certificate. Furthermore, he was born "Frank Pronto" in Milwaukee County and legally changed his name to "Frank Ybarra," his father's name, while living in Texas when he was in his twenties. However, he does not have the court records from this name change and is unable to acquire them without incurring significant financial and other burdens. Mr. Ybarra is currently experiencing homelessness and usually sleeps on the street. He has no regular income and no savings, but occasionally finds work on a day-by-day basis, and cannot afford any costs to obtain necessary documents for the state ID card application. As an unsheltered homeless person with no connection to any social service agency other than a meal program, it is unclear whether he can prove Wisconsin residency for the state ID card application and receive a state ID card in the mail at a current Wisconsin

residence street address.  Additionally, Mr. Ybarra could use his Texas court records as proof of identity, but barring that, he will be compelled to obtain a Social Security Card.  Mr. Ybarra wishes to vote in Wisconsin this year.

10.  Sam Bulmer is a 63-year-old Caucasian resident of Milwaukee, Wisconsin and an eligible and registered voter.  He has no accepted photo ID under the photo ID law and has never had a Wisconsin driver's license or state ID card. Mr. Bulmer is a 13-year veteran of the United States Air Force and was an instructor with the Air Force Training Command.  He is currently living in a homeless shelter for veterans and subsists on an extremely limited monthly pension, which is limited further by the shelter's policies requiring him to set aside a significant portion of his money.  Mr. Bulmer lacks a certified copy of his birth certificate from the State of Kansas and cannot afford the $15.00 birth certificate application fee.  Even if he could, he lacks the documents to satisfy the identification requirement for a mail-in birth certificate application.  Mr. Bulmer also lacks a Social Security Card ("SSC"), which is accepted proof of identity for the Wisconsin state ID card application.  Mr. Bulmer does, however, possess a Veterans Identification Card ("VIC"), which is issued by the U.S. Department of Veterans Affairs and contains his name and photograph.  Mr. Bulmer wishes to vote in Wisconsin this year.

11.  Plaintiff Pamela Dukes is a 51-year-old African-American resident of Milwaukee, Wisconsin and an eligible voter.  She has none of the accepted forms of photo ID under the photo ID law and lacks a certified copy of her birth certificate from Cook County, Illinois.  Ms. Dukes receives monthly Supplemental Security Income ("SSI") disability benefits, but has no other income or savings.  She spends the overwhelming majority of her SSI income on rent, and the remainder is devoted to utility bills and other necessary living expenses.  She is therefore unable to afford a certified copy of her Illinois birth certificate.  Ms. Dukes wishes to vote in Wisconsin this year.

12.  Plaintiff Carl Ellis is a 52-year-old African-American/Caucasian resident of Milwaukee, Wisconsin and an eligible voter.  A veteran of the United States Army, Mr. Ellis is currently living in a homeless shelter for veterans and has no income or savings.  Mr. Ellis has no accepted form of photo ID under the photo ID law and lacks a certified copy of his birth certificate from the Illinois Department of Public Health's Vital Records Office.  Mr. Ellis cannot afford to pay for a certified copy of his Illinois birth certificate.  He does, however, possess a Veterans Identification Card ("VIC"), which is issued by the U.S. Department of Veterans Affairs and contains his name and photograph.  He wishes to vote in Wisconsin this year.

13.  Rickie Lamont Harmon is a 60-year-old African-American resident of Milwaukee, Wisconsin and an eligible and registered voter.  His Wisconsin state ID card has expired and is not usable as photo ID to vote in Wisconsin.  Mr. Harmon is a veteran of the United States Army.  He is currently living in a homeless shelter for veterans.  Mr. Harmon has no accepted photo ID under the photo ID law, but does possess a Veterans Identification Card ("VIC"), which is issued by the U.S. Department of Veterans Affairs and contains his name and photograph.  Mr. Harmon wishes to vote in Wisconsin this year.

14.  Plaintiff Dartric Davis is a 21-year-old African-American resident of Milwaukee, Wisconsin and an eligible voter.  Mr. Davis has no accepted form of photo ID under the photo ID law and lacks a certified copy of his birth certificate from the Illinois Department of Public Health's Vital Records Office.  He moved to Wisconsin in 2011 and has never held a Wisconsin driver's license or Wisconsin state ID card.  Mr. Davis has made several attempts to acquire a certified copy of his birth certificate from Illinois, but has so far been unable to do so.  He wishes to vote in Wisconsin this year.

15.  Plaintiff Barbara Oden is a 57-year-old, African-American resident of Milwaukee, Wisconsin and an eligible voter.  Ms. Oden has no accepted form of photo ID under the photo ID law and lacks a Social Security Card ("SSC"), which is accepted proof of identity for the Wisconsin state ID card application.  She was

Case 2:11-cv-01128-jdp   Filed 03/02/12   Page 12 of 79   Document 31

denied an SSC by an employee at the Social Security Administration ("SSA") office, who told her that she must present a photo ID in order to obtain an SSC. Ms. Oden wishes to vote in Wisconsin this year.

16. Plaintiff DeWayne Smith is a 50-year-old, African-American resident of Cudahy, Wisconsin, which is in Milwaukee County, and an eligible and registered voter. Mr. Smith has no accepted form of photo ID under the photo ID law and lacks a Social Security Card ("SSC"), which is accepted proof of identity for the Wisconsin state ID card application. He has attempted on numerous occasions to obtain a replacement for his lost SSC. However, every time he visits the SSA office, employees inform him each time that he cannot obtain a replacement SSC without a photo ID. He has since learned that alternative identification, such as an employee ID card, a school ID card, or a health insurance cards, may be used to obtain an SSC, but he does not have any of those documents either. He wishes to vote in Wisconsin this year.

17. Plaintiff Sandra Jashinski is a 48-year-old, Caucasian and Native American (Cherokee) resident of Milwaukee, Wisconsin and an eligible voter. Ms. Jashinski has no accepted form of photo ID under the photo ID law and lacks a Social Security Card ("SSC"), which is accepted proof of identity for the Wisconsin state ID card application. An employee at the Social Security Administration office told Ms. Jashinski that she must present a photo ID in order

to obtain an SSC and then denied her an SSC when she could not do so. Ms. Jashinski is homeless and unsheltered and lacks connections to any social service agency other than a meal program. As a result, she may also have no way to prove her residency and receive a state ID card in the mail at a current Wisconsin residence street address. She wishes to vote in Wisconsin this year.

18. Plaintiff Justin Luft is a 20-year-old Caucasian resident of Milwaukee, Wisconsin and an eligible voter. He has no accepted form of photo ID under the photo ID law and has never had a Wisconsin driver's license or state ID card. Mr. Luft has twice traveled to the Wisconsin DMV office to obtain a state ID card, but was unable to do so due to his lack of a Social Security Card ("SSC") or any other accepted form of proof of identity. He has visited the Social Security Administration ("SSA") office multiple times with his mother, but has been unsuccessful in obtaining a duplicate of his SSC. He does not have a car, and thus, the trips he has made to try to obtain an SSC and state ID card have been by bus. He wishes to vote in Wisconsin this year.

19. Plaintiff Anna Shea is a 20-year-old Caucasian student at Lawrence University, an accredited four-year private university in Appleton, Wisconsin, and an eligible voter. She currently holds an unexpired driver's license from the State of Colorado which she does not want to surrender and a Lawrence voting-only ID

card, the validity of which for voting purposes remains uncertain. Ms. Shea voted in the November 2010 general election and wishes to vote in Wisconsin this year.

20. Plaintiff Matthew Dearing is an 18-year-old African-American student at Lawrence University, an accredited four-year private university in Appleton, Wisconsin, and an eligible voter. He currently holds an unexpired driver's license from the State of New York which he does not want to surrender. Lawrence University is offering its students voting-only ID cards, but their validity for voting purposes remains uncertain. Mr. Dearing wishes to cast his first vote this year in Wisconsin.

21. Plaintiff Max Kligman is a 19-year-old Caucasian student at Lawrence University, an accredited four-year private university in Appleton, Wisconsin, and an eligible voter. He currently holds an unexpired driver's license from the State of California which he does not want to surrender. Lawrence University is offering its students voting-only ID cards, but their validity for voting purposes remains uncertain. Mr. Kligman wishes to cast his first vote this year in Wisconsin.

22. Plaintiff Samantha Meszaros is an 18-year-old Caucasian freshman at Carthage College, an accredited four-year private college in Kenosha, Wisconsin, and an eligible voter. She lacks all the accepted forms of photo ID under the photo ID law. Upon information and belief, Carthage's newly revised student ID cards

15

will comply with Act 23's requirements, but the school has not started issuing these. She currently holds an unexpired driver's license from the State of Illinois which she does not want to surrender. Ms. Meszaros intends to cast her first vote this year in Wisconsin.

23. Plaintiff Steve Kvasnicka is a 20-year-old Caucasian junior at Carthage College, an accredited 4-year private college in Kenosha, Wisconsin, and an eligible voter. He lacks all the accepted forms of photo ID under the photo ID law. Upon information and belief, Carthage's newly revised student ID cards will comply with Act 23's requirements, but the school has not started issuing these. He currently holds an unexpired driver's license from the State of Illinois which he does not want to surrender. Mr. Kvasnicka wishes to vote in Wisconsin this year.

24. Plaintiff Sarah Lahti is an 18-year-old Caucasian resident of Milwaukee, Wisconsin, and a student at Milwaukee Area Technical College ("MATC"), where she is studying for her GED. She currently holds an unexpired driver's license from the State of Tennessee which she does not want to surrender and an MATC student ID card with her name and photo. She lacks all other accepted forms of photo ID under the photo ID law. Ms. Lahti wishes to cast her first vote this year in Wisconsin.

25. Plaintiff Domonique Whitehurst is an 18-year-old African-American and Native American (Blackfoot) student at Milwaukee Area Technical College

("MATC").  Mr. Whitehurst has an MATC ID card with his name and photo, but no other accepted form of photo ID under the photo ID law.  Mr. Whitehurst wishes to cast his first vote ever this year in Wisconsin.

26.  Plaintiff Edward Hogan is a 21-year-old Caucasian resident of Milwaukee, Wisconsin, and a student at MATC as well, where he is studying towards an associate's degree.  Mr. Hogan has an MATC student ID card with his name and photo, but no other accepted form of photo ID under the photo ID law. He wishes to vote in Wisconsin this year.

27.  Plaintiff Anthony Judd is a 46-year-old, Caucasian resident of Milwaukee, Wisconsin and an eligible voter.  He has none of the accepted forms of photo ID under the photo ID law.  Due to the efforts of an individual with no legal obligation to do so who provided financial and logistical support to him, subsequent to the filing of this lawsuit, Plaintiff Judd obtained documents and is in the process of applying for a photo ID card.  However, he has not yet received the state ID card, which DMV now mails to all applicants, and as an unsheltered homeless person, it is unclear whether his efforts will be successful.  He wishes to vote in Wisconsin this year.

28.  Anthony Sharp is a 19-year-old, African-American resident of Milwaukee, Wisconsin and an eligible voter.  He is living with his mother, and at the time the initial complaint in this action was filed, possessed none of the

accepted forms of photo ID under the photo ID law, and lacks a certified copy of his birth certificate. Mr. Sharp has no income or savings. Subsequent to the filing of this lawsuit, Mr. Sharp was able to obtain an ID card solely because Milwaukee County decided to allow certain persons born in the county to obtain free birth certificates, and because of repeated visits to various agencies to obtain other documents necessary to obtain photo ID. He intends to vote in Wisconsin next year.

29. Defendant Scott Walker is the Governor of the State of Wisconsin. He is sued in his official capacity only.

30. Defendant Judge David G. Deininger is the Chair of the Wisconsin Government Accountability Board ("GAB"). Defendant Judge Michael Brennan is the Vice Chair of the GAB. Defendants Judge Gerald C. Nichol, Judge Thomas Barland, and Judge Thomas Cane are the three remaining members of the GAB. There is currently one vacant seat. The GAB is charged with administering Wisconsin's election laws and has the authority to promulgate rules applicable to all jurisdictions within the state for the purpose of interpreting or implementing the laws regulating the conduct of elections or ensuring their proper administration. Each of the GAB members listed above is sued in his official capacity only.

31.  Defendant Kevin J. Kennedy is the Director and General Counsel of the GAB, and Defendant Nathaniel E. Robinson is the Administrator of the Elections Division of the GAB.  They are sued in their official capacities only.

32.  Defendant Mark Gottlieb is the Secretary of the Wisconsin Department of Transportation ("WisDOT"), which includes the DMV.  He is sued in his official capacity only.

33.  Defendant Lynne Judd is the Administrator of the Wisconsin DMV. She is sued in her official capacity only.

34.  Defendant Kristina Boardman is the Director of the Bureau of Field Services at the Wisconsin DMV.  She is sued in her official capacity only.

35.  Defendants Donald D. Reincke and Tracy Jo Howard are, respectively, the Region Manager and Region Operational Manager of the DMV Bureau of Field Services office for the Southwest Region.  Defendants Sandra M. Brisco and Barney L. Hall are, respectively, the Region Manager and Region Operational Manager of the DMV Bureau of Field Services office for the Southeast Region. Defendant Donald J. Genin is the Region Manager of the DMV Bureau of Field Services office for the Northeast Region.  Defendant Jill Louise Geoffroy is the Region Manager of the DMV Bureau of Field Services office for the North Central Region.  Defendant Patricia A. Nelson is the Region Manager of the DMV Bureau of Field Services office for the Northwest Region.  The Bureau of Field Services is

the entity within DMV responsible for issuing driver's licenses and identification cards. They are sued in their official capacities only.

## JURISDICTION AND VENUE

36. This case arises under the Constitution and laws of the United States. This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1343(a)(3) & (4), 2201-02 and 42 U.S.C. §§ 1971(d), 1973j(f), and 1983.

37. Venue in this district is proper under 28 U.S.C. § 1391(b)(1), because at least two of the Defendants reside in the Eastern District of Wisconsin and all the Defendants reside in Wisconsin, as well as 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims asserted herein have occurred—and continue to occur—in the Eastern District of Wisconsin.

## FACTS RELATED TO THE PHOTO ID LAW

38. Prior to the enactment of the photo ID law, with a single, limited exception,[1] Wisconsin voters were not required to provide proof of identity in order to cast a ballot, much less one of a specified, limited number of photo IDs. While Wisconsin voters need to provide proof of residence to register to vote if they are registering close to or on the day of an election, a range of documentation is accepted by Wisconsin election officials to prove residency, including both

---

[1] Under the Help America Vote Act ("HAVA"), first-time voters who register by mail must produce "a current and valid photo identification" or "a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter." 42 U.S.C. § 15483(b)(2).

photo and non-photo forms of identification such as ID cards or licenses of any kind issued by any Wisconsin governmental unit, utility bills, bank account statements, paycheck stubs, any government-issued document, and residential leases.

39.  The photo ID law, 2011 Wisconsin Act 23, was signed into law on May 25, 2011 and went into effect with the February 21, 2012 primary.  Under the new photo ID law, Wisconsin voters must present one form of photo identification from a limited statutory list in order to cast a ballot.[2]  Unlike voter ID laws in other states such as Indiana's photo ID law, which was upheld against a facial constitutional challenge in *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), Wisconsin's photo ID law applies to both in-person voting and most absentee voting.

40.  The list of accepted photo IDs in Wisconsin is restricted to only the following: (1) a Wisconsin driver's license; (2) a Wisconsin state ID card issued by the Wisconsin DMV; (3) an identification card issued by a U.S. uniformed service; (4) a U.S. passport; (5) a certificate of U.S. naturalization that was issued not earlier than 2 years before the date of an election at which it is presented; (6) an unexpired receipt issued at the time of application for a Wisconsin driver's license or state ID card; (7) an identification card issued by a federally recognized Indian

---

[2] This is in addition to, not instead of, the requirement to register to vote.

tribe in Wisconsin[3]; and (8) an unexpired identification card issued by a Wisconsin

university or college accredited as defined in Wis. Stat. § 39.30(1)(d), which

contains the signature of the individual to whom it is issued, the issuance date, and

an expiration date not later than 2 years after the date of issuance (collectively,

"accepted photo ID").  Wis. Stat. § 5.02(6m).[4]  The first four accepted photo IDs

must be unexpired or, if expired, must have expired after the date of the most

recent general election.  Wis. Stat. § 5.02(6m)(a).  A voter who is required to

surrender his or her driver's license or driving receipt by a law enforcement officer

within 60 days of the date of an election may present an original copy of the

citation or notice in lieu of the license or receipt for a license, and this too

constitutes "accepted photo ID."  Wis. Stat. § 6.79(7).

    41.  The following is a non-exhaustive list of forms of identification that will

not be accepted for in-person or absentee voting: (1) any federal photo

identification not specifically listed, and thus excluding, among others, Veterans

Identification Cards ("VICs"); (2) any Wisconsin government-issued card, license,

---

[3] Upon information and belief, the federally recognized tribes in Wisconsin are: Bad River Band of Lake Superior Chippewa, Forest County Potawatomi, Ho-Chunk Nation, Lac Court Oreilles Band of Lake Superior Chippewa, Lac du Flambeau Band of Lake Superior Chippewa, Menominee Indian Tribe, Oneida Tribe of Indians, Red Cliff Band of Lake Superior Chippewa, St. Croix Chippewa Indians, Sokaogan Mole Lake Community, and Stockbridge Munsee Community.

[4] A voter using a college or university ID card must also present separate proof of current enrollment.  A discussion of the proof-of-enrollment requirement appears in a September 12th GAB Memorandum.  *See* GAB Memorandum, "Photo ID Implementation Issues – Student ID Cards," Sept. 12, 2011, at 3-4.

or document other than a driver's license or state ID card; (3) driver's licenses and

state ID cards issued by other states; (4) any local government-issued card, license,

or document; (5) any public or medical assistance benefit cards issued by any unit

of government; and (6) any governmental or private employer photo identification.

42.  The only voters exempt from showing photo ID when voting in person

are electors with proof of confidential elector status due to the existence of a

protective order or similar proof of domestic violence.  Wis. Stat. § 6.79(6).

43.  The only voters exempt from providing photo identification when

voting absentee are military, overseas, or confidential voters, Wis. Stat. §§ 6.34(1),

6.87(4)(b)1; voters in nursing homes, qualified community based residential

facilities, qualified adult family homes, and qualified residential care apartment

complexes who vote with special voting deputies, Wis. Stat. § 6.875(6)(c), or

voters who live in such facilities that are not visited by special voting deputies and

who "submit[] with [their] absentee ballot[s] a statement signed by the same

individual who witnesses voting of the ballot that contains the certification of an

authorized representative of the complex, facility, or home that the elector resides

in the complex, facility, or home and the complex, facility, or home is certified or

registered as required by law, that contains the name and address of the elector,

and that verifies that the name and address are correct," Wis. Stat. § 6.87(4)(b)5;

voters who are indefinitely confined because of age, physical illness or infirmity or

are disabled for an indefinite period and who, by signing a statement to that effect, require that an absentee ballot be sent to the voter automatically for every election,[5] Wis. Stat. §§ 6.86(2)(a), 6.87(4)(b)2; and absentee voters who have not changed their names or addresses since the prior time they voted absentee and who previously provided proof of photo identification, Wis. Stat. § 6.87(4)(b)3.

44. 2011 Wisconsin Act 23 also imposed a requirement that in-person voters sign the poll book in order to receive a ballot, unless for reason of disability the person is unable to do so. Wis. Stat. § 6.79(2).

45. Under Wis. Stat. § 227.24, *as affected by* 2011 Wis. Act 21 *and as amended by* 2001 Wis. Act 32, an agency's proposed emergency administrative rule in final draft form is subject to gubernatorial review before it can be submitted for review by the relevant Standing Committee and the Joint Committee for the Review of Administrative Rules ("JCRAR") and—barring a legislative override— ultimately promulgated. Wis. Stat. § 227.24(1)(e)1g ("An agency may not file an emergency rule with the legislative reference bureau . . . and an emergency rule may not be published until the governor approves the emergency rule in writing."); *see also* Wis. Stat. § 227.185 (gubernatorial approval required for non-emergency administrative rules); Executive Order No. 50. If JCRAR determines a statement

---

[5] In these situations, the elector must submit "with his or her absentee ballot a statement signed by the same individual who witnesses voting of the ballot which contains the name and address of the elector and verifies that the name and address are correct." Wis. Stat. § 6.87(4)(b)2**.**

of policy or an interpretation of a statute is a rule, it may compel an agency to issue

an emergency rule and submit it to the Governor under Act 21. Wis. Stat. §

227.26(2)(b). If the agency is so directed, then it must submit a Statement of

Scope for Defendant Walker's review and approval or rejection. Wis. Stat. §

227.24(1)(e)1d. There is no binding statutory deadline by which the Governor

must respond to the agency. Even if the Governor approves the Statement of

Scope, he/she may still reject an emergency rule when it is subsequently submitted

in final draft form. Wis. Stat. § 227.24(1)(e)1g.

46. Initially, the GAB interpreted the photo ID law as not permitting the use

of technical college ID cards at the polls. *See* GAB Memorandum, "Photo ID

Implementation Issues – Student ID Cards," Sept. 12, 2011, at 1-3. However, at its

November 9, 2011 meeting, the GAB reversed course and voted unanimously to

find that technical colleges are embraced by the photo ID law's phrase "a . . .

college in this state that is accredited." Wis. Stat. § 5.02(6m)(f). However, on

November 15, 2011, the JCRAR voted 6-4 to force the GAB to issue an emergency

rule codifying its interpretation of the photo ID law, a rule that must be submitted

to Defendant Walker under Act 21 before the legislative review process. The

Statement of Scope for an emergency rule addressing the use of technical college

ID cards was submitted to Defendant Walker on November 22, 2011, and he

approved it on December 2, 2011. *See* GAB Memorandum, "Promulgation of 3

Emergency Rules as Directed by JCRAR," for Dec. 13, 2011 Meeting, at 1-3. Following its publication in the Administrative Register, the GAB approved the statement on January 12, 2012. GAB staff subsequently drafted a rule which the GAB approved, but the rule has not yet been promulgated in final form. Wis. Stat. § 227.24(1)(e)1d; Wis. Stat. § 227.24(1)(e)1g; GAB Memorandum, Approve Proposed Rule Permitting Use of Technical College Student Identification Cards for Voting, for the Feb. 7, 2012 Meeting, at 1.[6]

47. Given his power to approve or reject any emergency rule in final draft form, Defendant Walker exercises direct control over the implementation of the photo ID law and the scope and degree of the burdens it imposes on eligible Wisconsin voters, particularly technical college student voters in Class 4 (*see infra*). Defendant Walker also exercises veto power over any bill introduced to prevent the promulgation of an emergency rule. Wis. Stat. § 227.26(2)(i).

48. Even if Defendant Walker approves the emergency rule concerning the use of technical college ID cards, the Legislature may still block it by enacting a statute. During the November 15th meeting, several of the JCRAR members who voted with the majority expressed their belief that the Legislature did not intend to include technical college ID cards, because an amendment designed expressly to authorize their use as accepted photo ID (in addition to the statutory accredited-

---

[6] *See* GAB 10 Relating to Voter Identification, Specifies a WTCS ID Card May Be Used for Voting, *available at* https://health.wisconsin.gov/admrules/public/Rmo?nRmoId=12383.

college standard above) was defeated. The JCRAR's actions continue to threaten the exclusion of technical college ID cards from the list of accepted photo ID. Furthermore, given the review process and publication and notice requirements, the rule could not be made effective before the February 21, 2012 primary election, though GAB did instruct elections officials throughout the state to accept technical college ID cards. *See* GAB Memorandum, "Promulgation of 3 Emergency Rules as Directed by JCRAR," for Dec. 13, 2011 Meeting, at 2-3. At this pace, even assuming Defendant Walker and the Legislature do not block the emergency rule, it may not be in effect for the Spring Election and Presidential Preference Primary on April 3, 2012 either.

49. There were 382,006 students enrolled in the technical college system in the 2009-2010 academic year, or 8.8% of Wisconsin's total voting-age population.[7] Of these technical college students, there were approximately 60,000 minority

---

[7] The 2010 Census dataset labeled "2010 Redistricting Data SF (PL 94-171)" was used to calculate this percentage.

enrollees.[8]  By contrast, there are less than 20,000 minority students in the entire

University of Wisconsin ("UW") System in the present academic year.[9]

50.  Student voters at colleges or universities outside the technical college

system face their own challenges in casting a ballot.  Upon information and belief,

all college and university ID cards in Wisconsin at the time the photo ID law was

enacted lacked one or more of the required elements: a signature, an issuance date,

and an expiration date not later than 2 years after the issuance date.  In early

September, the GAB voted to permit the use of stickers to supply the missing

required information and thereby bring non-complaint student ID cards into

compliance.  *See* GAB Memorandum, "Photo ID Implementation Issues – Student

ID Cards," Sept. 12, 2011, at 4-5.  Upon information and belief, this method is

significantly less expensive than digitally printing the missing information on

wholly redesigned ID cards.  At its September 27, 2011 meeting, members of the

Wisconsin State Legislature's JCRAR expressed concerns about the use of stickers

and communicated their belief that the GAB could only lawfully implement this

---

[8] The Wisconsin Technical College System's publicly available data is less than complete.
27,709 students did not report race or ethnicity, and though 2,210 are listed as "multi-ethnic,"
there is no more specific information.  The figure reported above is the summation of the
American Indian, Asian, black, Hispanic, and Hawaiian or Pacific Islander populations for 2009-
2010, which is 59,673 students.  Wisconsin Technical College System, FY 2001-2010
Systemwide Enrollment by Sex and Race/Ethnicity, *available at*
http://www.wtcsystem.edu/reports/data/factbook/pdf/ethnicity.pdf.

[9] The University of Wisconsin System, Students Statistics, Fall 2011-12, Headcount Enrollment
by Race/Ethnicity and Age, *available at* http://www.wisconsin.edu/opar/ssb/2011-
12/pdf/r_b107_tot.pdf.

policy by adopting an administrative rule. Following that meeting, Defendant Kennedy submitted a memo to the GAB, urging it to reverse course. *See* GAB Memorandum, "Administrative Rulemaking Process and Timeline," Oct. 6, 2011, at 1-2. However, at its November 9, 2011 meeting, the GAB reaffirmed that colleges and universities could bring their ID cards into compliance with stickers that included the missing information. However, on November 15, 2011, the JCRAR voted 6-4 to force the GAB to issue an emergency rule codifying the sticker supplementation policy, a rule that will first be submitted to Defendant Walker under 2011 Wis. Act 21. *See infra*. Therefore, the JCRAR's actions threaten to block the use of stickers to bring student ID cards into compliance with the photo ID law.

51. In order to promulgate an emergency rule allowing colleges and universities to take advantage of stickers as a cost-efficient solution, the GAB must first submit a Statement of Scope for Defendant Walker's review and approval or rejection. Wis. Stat. § 227.24(1)(e)1d. As of March 2, 2011, the GAB had still not submitted a Statement of Scope to Defendant Walker. *See* GAB Memorandum, "Promulgation of 3 Emergency Rules as Directed by JCRAR," for Dec. 13, 2011 Meeting, at 2.[10] Given his power to reject this emergency rule in its final draft

---

[10] Despite this inaction, upon information and belief, a number of college and university administrations are relying on stickers to affix one or more of the missing pieces of information, such as a 2-year expiration date, to their students' revised voting-only ID cards.

form, Wis. Stat. § 227.24(1)(e)1g, and his power to veto any legislation attempting to override the rule, Wis. Stat. § 227.26(2)(i), Defendant Walker exercises direct control over the implementation of the photo ID law and the scope and degree of the burdens it imposes on eligible Wisconsin voters, particularly student voters with out-of-state drivers' licenses who are members of Class 3 (*see infra*).

52.  Even if GAB initiates the rulemaking process on the sticker supplementation option, given certain notice and publication requirements, as well as the lack of any binding deadline by which the Governor must respond to the submitting agency, it will be impossible to obtain legal clarity in a timely manner on the validity of using stickers to bring student ID cards into compliance with the photo ID law. Wisconsin colleges and universities require clarity on this issue as soon as possible, and the GAB needs to begin training poll workers well in advance of this year's upcoming elections. *See* GAB Memorandum, "Administrative Rulemaking Process and Timeline," Oct. 6, 2011, at 2-4.[11]

53.  Forcing the GAB to issue administrative rules to implement a less expensive fix for student ID cards such as stickers and to ensure that technical

---

[11] In a memorandum for the GAB's December 13, 2011 meeting, Defendant Kennedy wrote: "Staff remains concerned that JCRAR's actions on these three matters, and the general exercise of §227.26(2), Wis. Stats., authority for day-to-day election administration issues, affect the ability of the G.A.B. to provide timely and uniform advice for the proper administration of elections, particularly with sufficient notice such that proper training of election officials may be conducted. As a result of 2011 Act 21, the process to complete promulgation of an emergency rule is more complicated and lengthy." *See* GAB Memorandum, "Promulgation of 3 Emergency Rules as Directed by JCRAR," for Dec. 13, 2011 Meeting, at 2.

college student ID cards will be accepted has already increased the probability that numerous colleges and universities will fail to issue compliant student ID cards in time for upcoming elections this year.

54. Technical college ID cards will need to conform to the same statutory specifications outlined for all college and university ID cards, but these schools have no incentive to begin this time-consuming and costly process without an assurance that such cards will in fact be usable for voting purposes. Until the conclusion of the emergency rulemaking and review process is completed for "GAB 10 Relating to Voter Identification, Specifies a WTCS ID Card May Be Used for Voting," technical colleges will lack a conclusive legal answer on the categorical validity of their students' ID cards.

55. Upon information and belief, some private and University of Wisconsin System ("UW System") campuses, as well as some technical colleges, have started to issue, or stated they will issue, student ID cards that comply with the photo ID law's specifications.

56. Upon information and belief, a number of Wisconsin private colleges and UW System campuses have either started to issue, or stated they will issue, separate voting-only ID cards. Upon information and belief, the GAB has reportedly approved a design for the UW System voting-only ID cards, but it has

not issued any formal and publicly available documentation approving any college or university's new voting-only ID cards.

57.  At the November 9, 2011 hearing, Defendant Kevin Kennedy stated that the GAB will be reviewing every Wisconsin college or university ID card for its conformity to the photo ID law and for its security.  The GAB will inform municipal clerks and poll workers throughout Wisconsin as to which college or university ID cards may be accepted at the polls and which may not be accepted.  Therefore, the validity of each voting-only ID card issued by a college or university will ultimately be determined by the GAB.  Until the GAB formally and publicly approves a particular college or university's ID card, given the uncertainty and policy reversals surrounding the use of student ID cards to vote in Wisconsin, students at that school will have no assurance that these separate voting-only ID cards will in fact be treated as accepted photo ID for voting purposes in 2012.

58.  Upon information and belief, other Wisconsin colleges and universities have expressed that they have no plans at this time to issue any kind of voting-compliant student ID cards.

## FACTS RELATED TO OBTAINING WISCONSIN PHOTO ID AND THE UNDERLYING DOCUMENTS REQUIRED BY WISCONSIN DMV

59.  The Wisconsin DMV, a division of WisDOT, is required to issue state ID cards free of charge if the applicant is a U.S. citizen, will be at least 18 years

old by the next election, and requests that the card be provided free for voting purposes. Wis. Stat. § 343.50(5)(a), *as amended by* 2011 Wis. Act 23 § 138. A voter may not receive a state ID card for free if he or she currently possesses an unexpired Wisconsin driver's license. Act 23 failed to make duplicate ID cards (replacements for lost or stolen IDs) issued for voting purposes free of charge, but this was changed by subsequent legislation which went into effect at the beginning of January 2012.

60. Defendants' public education efforts and training of DMV, GAB, and local officials involved in election administration remain woefully inadequate to inform eligible Wisconsin voters of the specific requirements for voting under Act 23 and ensure uniform, non-arbitrary treatment during the state ID card application process. For example, upon information and belief, numerous local officials and even DMV employees continue to erroneously inform voters at polling places and at DMV offices that the address on an accepted photo ID must reflect the voter's current address. Moreover, upon information and belief, some voters who have applied for state ID cards for voting purposes are still being charged fees for duplicate ID cards and/or are unaware of the changed requirements. As a consequence, voters face arbitrary, unlawful, and unfair treatment when applying for duplicate ID cards for voting purposes. This demonstrates Defendants'

33

widespread failure to train and educate county and municipal clerks, DMV employees, and poll workers on what the photo ID law does and does not mandate.

61.  As of the week of January 23, 2012, DMV had 92 offices in the State of Wisconsin, an increase from 88 offices when the photo ID law was enacted.

62.  Only one DMV office in Wisconsin has any weekend hours, and the Madison Odana Renewal Center only processes <u>renewal</u> license and ID card applications.  Thus, there is no DMV office in Wisconsin that will process an original driver's license or state ID card application on the weekend.

63.  No DMV office in Wisconsin stays open later than 5:30 p.m.

64.  Not all DMV offices are open full-time.  Each county must have at least 20 hours per week of driver's license and state ID card services, and a number of DMV offices are open only 20 hours a week.  Wis. Stat. § 110.08(5)(a).

65.  Upon information and belief, WisDOT has no plans to establish and deploy mobile DMV units capable of servicing voters who live far from a DMV office and/or otherwise have difficulty traveling to a DMV office to obtain a state ID card for voting purposes.

66.  An individual who resides in Wisconsin and wishes to obtain a free Wisconsin ID card for voting purposes must surrender any valid out-of-state driver's license he/she possesses.  Wis. Stat. § 343.50(1)(b), *as amended by* 2011 Wis. Act 23 § 130.

67.  A person with a driver's license from another state who wishes to obtain a Wisconsin driver's license must pay a fee.  Wis. Stat. § 343.21.  There is no fee waiver for obtaining a driver's license, even if that license will constitute the individual's sole form of accepted photo ID for voting purposes.

68.  Wisconsin DMV offices require first-time applicants for state ID cards and driver's licenses to present: (1) proof of name and date of birth, (2) proof of identity, (3) proof of citizenship, legal permanent resident or conditional resident status of the United States, or legal presence in the United States, (4) proof of Wisconsin residency, and (5) a Social Security Number.  Wis. Admin. Code Trans. § 102.15(2).  "First-time applicants" encompass all applicants who have not previously held a Wisconsin driver's license or ID card, even if they have such licenses or cards from other states.

69.  Applicants for a renewal, reinstatement, reissue, or duplicate[12] Wisconsin driver's license or state ID card must present proof of identity, Wis. Admin. Code Trans. § 102.15(2)(b), and may be required to present proof of citizenship, legal permanent resident or conditional resident status of the United Status, or legal presence in the United States.  *Id*. § 102.15(2)(bm)2.[13]  Applicants

---

[12] A replacement for a lost or stolen identification card (or driver's license) is called a "duplicate."

[13] The DMV website suggests that any applicant who has previously held a Wisconsin driver's license or state ID card more than 8 years ago must submit all the same documentation as a first-time applicant: "If you have held a driver license in the past eight years and now wish to apply

for a renewal, reinstatement, reissue, or duplicate Wisconsin driver's license or state ID card following certain actions, such as suspension, revocation, or cancellation of the prior license or ID card, must also provide proof of name and date of birth and proof of residency.  *Id*. § 102.15(2)(c).  Applicants for an original, renewal, reinstatement, reissue, or duplicate driver's license or state ID card may be required to provide proof of residency if the applicant uses certain documents to prove name and date of birth or identity, or if the documents do not have a current residential address or do not include a current acceptable Wisconsin residential address.  *Id*. § 102.15(4m).

70.  Voters who lack the necessary primary documents for an original, renewal, duplicate, or reinstatement driver's license or ID card often must travel to and interact with multiple government offices and entities, such as the vital records office of their birth state and the Social Security Administration, in order to obtain

---

for an original ID card, you would only be required to provide proof of identity upon application for your ID card."  For those whose licenses or ID cards expired within the last 8 years, a separate regulation provides that identity is proven where the DMV is able to locate a record with a digital photo of the applicant for a duplicate, reinstated, or renewed license or state ID card.  *See* Wis. Admin. Code Trans. § 102.15(4)(c) ("A person applying without a personal appearance to reinstate a suspended or revoked license or identification card or to renew a license subject to s. Trans 102.03 (2) and (5) or obtain a duplicate license or identification card, if all of the following apply: 1. The department is able to produce an acceptable photograph and facsimile signature for the individual from its digital image computer records. 2. The person's name as shown on the license is unchanged. 3. The person is a Wisconsin resident.").  It is unclear whether this alternative procedure to prove identity is uniformly applied to all duplicate, reinstatement, and renewal applicants.  In any event, based on when the person applicant last obtained a DMV product, there may not be any digital photo of the person on file.  Upon information and belief, typically the photos contained in the system date from 2005 onward, and the oldest photos are from 1992.

the underlying documents needed to secure a state ID card. The process to obtain documents required in order to obtain a photo ID card can be extremely complex and difficult, particularly for individuals with lower levels of education, literacy, and resources, and limited or no access to information or reliable transportation.

71. If voters lack one or more of the documents required in order to obtain a Wisconsin state ID card, Defendants do not normally provide direct or individualized assistance to the voters to obtain those documents.

72. Rules promulgated by WisDOT provide that for a driver's license or state ID card application satisfactory proof of name and date of birth includes the following: (a) for a person born in Wisconsin, a certified copy of the person's Wisconsin birth certificate; (b) for a person born in another jurisdiction, other than a Canadian province, a certified copy of his or her birth certificate or the equivalent document from that other jurisdiction or a certificate of birth abroad issued by the U.S. Department of State; (c) a U.S. passport; (d) an expired Wisconsin driver's license; (e) an expired Wisconsin ID card; (f) a U.S. certificate of naturalization (which costs $345.00); (g) a certificate of U.S. citizenship (which costs $600.00); (h) a Native American ID card which was issued by a federally recognized tribe or a band of a federally recognized tribe in Wisconsin, includes a photograph and signature, and has been approved by the Secretary of WisDOT; (i) a court order under seal related to the adoption or divorce or to a name or gender change that

includes the person's current full legal name, date of birth and in the case of a name change or divorce order, the person's prior name; (j) an armed forces of the United States common access card or DD Form 2 ID card issued to military personnel; (k) a Department of Homeland Security/Transportation Security Administration ("DHS/TSA") transportation worker identification credential; or various immigration documents. *Id*. § 102.15(3).

73. If the applicant is unable to provide accepted proof of name and date of birth and the documents are "unavailable" (defined in Wis. Admin. Code Trans. § 102.15(1) to exclude documents the applicant merely forgot to bring, as well as lost or destroyed documents where a replacement original or certified copy may be obtained upon request), then the applicant may petition the DMV Administrator, Defendant Judd, to consider alternative documentation of name and date of birth. Wis. Admin. Code Trans. § 102.15(3)(b). Defendant Judd may delegate to her subordinates the authority to accept or reject such alternative proof of name and date of birth, but there are seemingly no rules or standards guiding that determination. *Id*. § 102.15(3)(c). Upon information and belief, no signage or other clear public notice at DMV offices or on the DMV website announces that this alternative procedure even exists.

74. WisDOT rules provide that for a driver's license or state ID card application, satisfactory proof of citizenship, legal permanent resident status,

conditional resident status or legal presence includes a U.S. state or local government-issued birth certificate, a valid U.S. passport, a certificate of U.S. citizenship (which costs $600.00), a U.S. Certificate of naturalization (which costs $345.00), a DHS/TSA transportation worker identification credential, and a variety of immigration documents.  Wis. Admin. Code Trans. § 102.15(3m).  Therefore, a first-time applicant for a Wisconsin ID card who lacks a U.S. passport, has no immigration and naturalization history, and does not work for DHS/TSA, must either produce a certified copy of his/her birth certificate to obtain a Wisconsin photo ID card or pay at least $55.00 to obtain a U.S. passport card.

75.  Prior to 2007, when Wisconsin law was amended to comply with the REAL ID Act, individuals could obtain Wisconsin driver's licenses and state ID cards without presenting documentary proof of citizenship.  2005 Wis. Act 126 § 2; 2007 Wis. Act 20 §§ 3245, 3257, 3379; Wis. Stat. §§ 343.165(1), 343.14(2)(es), 343.50(4).  Now this documentary proof is mandatory.

76.  Plaintiffs Ruthelle Frank, Shirley Brown, Nancy Lea Wilde, Eddie Lee Holloway Jr., Mariannis Ginorio, Frank Ybarra, Sam Bulmer, Pamela Dukes, Carl Ellis, and Dartric Davis have no document listed in Wis. Admin. Code Trans. § 102.15 that they can use to prove their name and date of birth and U.S. citizenship.

77.  While Wis. Admin. Code Trans. § 102.15 does not set forth any alternative procedure for ID card applicants unable to obtain one of the listed forms

of documentary proof of U.S. citizenship, Defendant Judd has nevertheless suggested that some alternative procedure to prove citizenship, name and date of birth, and possibly other documentary proof requirements, may exist. Upon information and belief, some applicants for whom there is no birth certificate on file at a vital records office have been told they can satisfy the proof of citizenship requirement by: (1) obtaining a document from the relevant vital records office certifying that there is no record of birth on file; and (2) if requested, presenting alternative documents evidencing the person's birth, including but perhaps not limited to hospital certificates and baptismal certificates. DMV informed Plaintiff Nancy Lea Wilde that they could make use of an alternative procedure involving the certification of a lack of a birth record. To the extent such a procedure exists, upon information and belief, DMV does not consistently or routinely inform voters of, or apply, this procedure. A similarly situated voter like Plaintiff Shirley Brown, whose birth in Louisiana was never registered and who has no birth certificate, was never offered an opportunity to prove her eligibility for an ID card in this manner. It remains unclear whether DMV offices are in fact issuing ID cards under this alternative procedure.

78. Upon information and belief, there are no written rules, standards, or procedures governing who is given notice of any alternative procedure that may exist, or regarding the type and quantity of alternative documents that may suffice

to meet the requirement. Moreover, upon information and belief, there are no written rules, standards, or procedures governing the DMV's review of applications making use of any alternative procedure that may exist. Instead, each application is reviewed on an ad hoc basis by DMV officials unconstrained by specific and definite rules and standards.

79. Upon information and belief, some applicants with inaccurate birth certificates due to name misspellings, name transpositions, and other defects may also be allowed to substitute alternative documentary proof and obtain photo ID cards. However, upon information and belief, DMV lacks any notice procedures or standards for applying the suggested alternative procedure. DMV employees never offered any such alternative procedure to persons including but not limited to Plaintiffs Ruthelle Frank and Eddie Lee Holloway, Jr.

80. To the extent DMV is offering some applicants an alternative means of satisfying the name and date of birth and/or proof of citizenship (when a birth certificate is "unavailable" or otherwise insufficient) and/or other documentary proof requirements for a state ID card, upon information and belief, the alternative scheme is marked by a standard-less exercise of discretion and has resulted in the arbitrary and disparate treatment of similarly situated voters who are attempting to acquire Wisconsin's accepted photo ID of last resort.

81.  The inconsistent and seemingly arbitrary treatment of voters without birth certificates demonstrates that DMV employees have not been adequately trained on the photo ID law, on whatever rules, policies, and procedures may exist to handle ID card applicants without birth certificates or with inaccurate birth certificates, and/or on how to handle and resolve situations that are not addressed by existing rules, policies, and procedures.

82.  Persons born in Wisconsin can obtain certified copies of their birth certificates from the Wisconsin Vital Records Office in the Wisconsin Department of Health Services or from local registrars.  Wisconsin normally charges $20.00 to locate and make a certified copy of a birth certificate, and the voter generally must bear his or her own costs in obtaining the birth certificate.

83.  Fees to obtain birth certificates for persons born outside Wisconsin vary and can be even higher than Wisconsin's fee.  Minnesota, for example, charges $26.00 for a certified copy of a birth certificate.

84.  Some states will charge a fee for merely searching their records, regardless of whether or not a record of birth is found.  The birth certificate application forms for both Wisconsin and Louisiana, the birth states of Plaintiffs Nancy Lea Wilde and Shirley Brown, respectively, charge for a "search" of birth records, not just for copies that are in fact located.

85.  Certain states' and counties' vital records offices require a government-issued photo ID to obtain a certified copy of one's birth certificate or otherwise set forth a restrictive list of documents that must be shown in order to obtain a certified copy of a birth certificate, including offices in Illinois (Dartric Davis, Pamela Dukes, Carl Ellis, and Eddie Lee Holloway, Jr.), Kansas (Sam Bulmer), Puerto Rico (Ginorio), and Wisconsin (Ybarra).  Often these document lists are restricted to documents that many voters, including poor, homeless, and/or informally housed individuals, are unlikely to possess.

86.  In many states, including Wisconsin, identification requirements imposed on individuals differ in practice from the official statutory or regulatory requirements and are inconsistently applied to similarly situated applicants.  These requirements are often inconsistently or misleadingly stated in publicly available documents, including on official websites and on the applications themselves, even for different vital records offices within the same state.

87.  Wisconsin state law, Wis. Stat. § 69.21, sets forth that state and local registrars "shall" issue a certified copy of a birth certificate to a person "with a direct and tangible interest" in the matter, who pays the required fee.  Administrative rules confirm that the "state registrar and local registrars shall provide certified documentary proof of a vital event for individual use to any person who requests that proof and has a direct and tangible interest as defined in

s. 69.20 (1), Stats." Wis. Admin. Code DHS § 142.04. However, the birth certificate application form requires that the person requesting a certified copy of a birth certificate provide "acceptable identification," in the form of either a "current valid photo ID," *i.e.*, a Wisconsin or out-of-state driver's license or state photo ID card, or two items from a limited list of types of secondary identification documents. The secondary list includes only the following: a government-issued employee I.D. card or badge with photo, a U.S. passport, a checkbook or bankbook, a "major" credit card, a health insurance card, a "recent" dated, signed lease, a "recent" utility bill, or "recent" traffic ticket. The application available on the Wisconsin Department of Health Services' ("DHS") website states that the identification requirement applies to both in-person and mail-in applications. At the time of this filing, numerous county registrar websites continued to state that no identification is required if the certified copies are mailed to the applicant. For instance, the birth certificate application on the Dane County Register of Deeds website calls for "valid photo ID," but makes clear that this is only "required to pick up [the certificate] in person." As a result, similarly situated voters throughout Wisconsin have to follow different identification requirements in obtaining their birth certificates depending on the county in which they were born.

88. WisDOT rules provide that for a driver's license or state ID card application, satisfactory proof of identity includes only the following: (a) a valid

driver's license, including a license from another jurisdiction, except a Canadian province; (b) military discharge papers; (c) a U.S. government and military dependent ID card; (d) a valid photo identification card issued by Wisconsin or another jurisdiction, except a Canadian province; (e) a marriage certificate or certified copy of judgment of divorce; (f) a Social Security Card; (g) an additional document that would be sufficient to prove name and date of birth, but was not used to prove name and date of birth; or (h) a DHS/TSA transportation worker identification credential. Wis. Admin. Code Trans. § 102.15(4).

89. For many low-income eligible Wisconsin voters, presenting a Social Security Card ("SSC") is the only method to prove identity to the Wisconsin DMV. In order to obtain an SSC, the Social Security Administration generally requires an individual to provide evidence of identity. To obtain an original SSC, the applicant must establish his/her U.S. citizenship, age, and identity. For a replacement SSC, the applicant must provide documents to establish his/her U.S. citizenship and identity. Upon information and belief, identification requirements that SSC applicants are told they must satisfy often differ in practice from the requirements set forth in law. These requirements are inconsistently stated and applied to applicants across Wisconsin's SSA offices and even to different applicants at the same SSA office.

90. WisDOT rules provide that to obtain a driver's license or state ID card, an individual may be required to provide a form of proof that contains "a current acceptable Wisconsin residence street address." *Id*. § 102.15(4m).[14] A document listing a post office box or commercial mail receiving agency as the mailing address is not acceptable.

91. Under official state regulations, satisfactory proof of residency includes only the following: (a) a utility bill for water, gas, electric or landline phone service which is at least 30 days old; (b) a paycheck or stub with the customer's name and address, and the employer's name and address; (c) an account statement at least 30 days old from a Wisconsin financial institution; or (d) mortgage documents for a residential real property located in Wisconsin. *Id*. § 102.15(4m)(b), (c), (d), (f).[15]

92. The Wisconsin DMV's website sets out a broader list of purportedly acceptable documents to prove residency. The policy authorizing the use of such documents has not, however, been promulgated as an official administrative rule and, for the reasons discussed in paragraph 47, may not be legally binding and could be blocked or overridden by the actions of Defendant Walker or the Legislature. Moreover, even the unofficial website list of accepted documentary

---

[14] The Wisconsin DMV website states that this is mandatory for all first-time applicants aged 18 years or older.

[15] So numbered in original; no (a) or (e) are listed in the regulations.

proof of residency fails to expressly include such documents as Internet bills, provide a procedure to establish residency for unsheltered homeless persons who lack a relationship with a social service organization, or provide a procedure for other voters who do not receive bills, bank accounts, or other permissible documents at an allowable mailing address.

93.  Recently, Wisconsin DMV updated its website to include a policy allowing individuals experiencing homelessness to prove residency.  Under this policy, an ID card applicant lacking a current residence address may obtain a letter from a shelter or other private or public "social service organization" or "social service agency" (terms which are not defined) with whom he or she has a relationship, attesting to the individual's residency and stating that the organization will receive an ID card in the mail on the applicant's behalf.  The letter must be on official letterhead and certify that the person working with the social service provider knows the applicant, the applicant's name, and that the individual frequents the residence listed for purposes of securing an ID card (which could include a homeless shelter or other location where a homeless person may spend time or return to).  At this time, the policy remains vague, and it is unclear how DMV will interpret and apply it, or whether there has been sufficient training for employees and guidance for social service organizations to ensure proper and consistent treatment.  Moreover, it appears that the policy relies solely on the

willingness of social service organizations to verify a homeless individual's residence and to receive and hold ID cards mailed to them. As a consequence, the policy excludes from protection homeless individuals without ties to social service organizations and those with ties to organizations that cannot or will not complete the required certification, and it may exclude from protection those homeless individuals who move between locations or social service organizations, either voluntarily or involuntarily.

## THE PHOTO ID LAW'S IMPACT ON RACIAL MINORITIES IN MILWAUKEE COUNTY, WISCONSIN AND THE STATE OF WISCONSIN

94. The photo ID law is a voting standard, practice, or procedure under 42 U.S.C. § 1973(a).

95. African-American and Hispanic/Latino voters in Milwaukee County, Wisconsin and, upon information and belief, in the State of Wisconsin as a whole will be individually disfranchised and collectively disempowered by the photo ID law.

96. African-American and Hispanic/Latino voters in Milwaukee County, Wisconsin and, upon information and belief, in the State of Wisconsin disproportionately lack accepted photo ID and disproportionately lack the documents necessary to obtain a free Wisconsin state ID card, when compared to their white counterparts. As a result, these minority voters in Milwaukee County,

Wisconsin and in the State of Wisconsin are less likely to be able to obtain accepted photo ID than their white counterparts.

97.  These statistically significant racial disparities in rates of accepted photo ID and underlying document possession stem from a variety of social and historical factors.  African-American and Hispanic/Latino voters in Milwaukee County, Wisconsin and in the State of Wisconsin have lower income, lower employment rates, lower levels of education, and lower access to information than their white counterparts.

98.  Members of these minority groups in Milwaukee County, Wisconsin and, upon information and belief,  in the State of Wisconsin will be denied the right to vote on account of race or color by the photo ID law.  Since minority voters will be disproportionately barred from voting under this strict photo ID requirement, the political processes in Milwaukee County, Wisconsin and, upon information and belief, in the State of Wisconsin, are not equally open to participation by African-American and Hispanic/Latino voters, and they will therefore have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

99.  These statistically significant disparities dilute the voting strength of African-American and Hispanic/Latino voters in Milwaukee County, Wisconsin

and, upon information and belief, in the State of Wisconsin, and thus impair their ability to elect representatives of their choice.

100.  The recorded racial disparities in terms of possession of accepted photo ID and the primary documents DMV accepts for Wisconsin state ID card applications are statistically significant and demonstrate that the photo ID law has reduced the probability that votes cast by African-American and Hispanic/Latino residents of Milwaukee County, Wisconsin and, upon information and belief, the State of Wisconsin will be counted.

101.  An alternative election scheme is available that does not have a disproportionate negative impact on the opportunity of African-American and Hispanic/Latino voters in Milwaukee County, Wisconsin and, upon information and belief, the State of Wisconsin to participate in the political process and elect representatives of their choice, as compared to other members of the electorate.

102.  African-American and Hispanic/Latino voters bear the effects of racial discrimination in education, employment, housing, and health, which have hindered their ability to participate effectively in the political process.  The photo ID law operates upon this existing vulnerability to disfranchise African-American and Hispanic/Latino voters in Milwaukee County, Wisconsin and the State of Wisconsin.

103. Certain political campaigns in Milwaukee County, Wisconsin and the State of Wisconsin have been characterized by overt and subtle racial appeals, as well as racialized statements by voters.

104. There has been a lack of responsiveness on the part of elected officials to the particularized needs of the members of the African-American and Hispanic/Latino communities in Milwaukee County, Wisconsin and the State of Wisconsin.

105. The policies and justifications proffered in defense of the photo ID law are tenuous and not supported by the evidence.

## PLAINTIFF CLASS ALLEGATIONS

## CLASS 1

106. Class 1 is defined as: all eligible Wisconsin voters who lack accepted photo ID, lack one or more of the documents DMV accepts to obtain a Wisconsin ID card for voting purposes, and face legal or systemic practical barriers to completing the process of obtaining an ID.

107. This class of eligible Wisconsin voters who lack accepted photo ID includes—but is not limited to—individuals who are unable to obtain photo ID from the DMV because they: were never issued birth certificates or lack accurate birth certificates; are unable to obtain certified copies of their birth certificates due

to their birth states' identification requirements; lack and cannot obtain proof of Wisconsin residency; and lack and cannot obtain any documentary proof of identity accepted by the Wisconsin DMV.

108.  This class is sufficiently numerous such that joinder of all members is impracticable.  There are questions of law and questions of fact that are common to the class.  Class 1 Representatives Ruthelle Frank, Shirley Brown, Nancy Lea Wilde, Eddie Lee Holloway, Jr., Mariannis Ginorio, Frank Ybarra, Sam Bulmer, Dartric Davis, Justin Luft, Barbara Oden, DeWayne Smith, Sandra Jashinski, and Anthony Judd's claims are typical of the claims of the class, and the representatives will fairly and adequately protect the interests of the class.

109.  Prosecuting separate actions by individual class members would create a risk of: (a) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants; or (b) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.  Additionally, by denying the right to vote to eligible Wisconsin voters who have been unable to obtain one or more of the primary documents accepted by DMV for the Wisconsin state ID card application, Defendants have acted or refused to act on grounds that apply generally to the

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## CLASS 2

110. Class 2 is defined as: all eligible Wisconsin voters who lack accepted photo ID and for whom the costs incurred in obtaining a Wisconsin state ID card, including but not limited to the cost of obtaining certified and accurate copies of birth certificates or any other documentary proof accepted by the Wisconsin DMV or the cost of traveling to the nearest Wisconsin DMV office, would constitute a financial burden.

111. The photo ID law will force a significant percentage of eligible, poor Wisconsin voters to make a choice between, on the one hand, paying for a birth certificate and/or marriage certificate and/or incurring significant travel costs in order to acquire a state ID card and, on the other hand, paying for basic life necessities. This constitutes an at least substantial burden, which is undue and unconstitutional burden under the Equal Protection Clause of the Fourteenth Amendment.

112. This class is sufficiently numerous such that joinder of all members is impracticable. According to the 2005-2009 American Community Survey ("ACS") 5-Year Estimates, approximately 357,912 Wisconsin residents ages 18 to 64 and 57,900 Wisconsin residents ages 65 years and older had incomes below 100

percent of the federal poverty level ("FPL"), and approximately 161,664 Wisconsin residents ages 18 to 64 and 16,183 Wisconsin residents ages 65 years and older had incomes below 50 percent of the FPL. According to the 2006-2010 American Community Survey ("ACS") 5-Year Estimates, approximately 10.3% of the Wisconsin voting-age population—or 443,082 individuals—had incomes below the FPL in the last 12 months. According to a study conducted by the Wisconsin Department of Children and Families, in November 2008, there were 12,608 families who were receiving food stamps in the State of Wisconsin but had zero earned or unearned income.

113. There are questions of law and questions of fact that are common to the class. Class 2 Representatives Pamela Dukes, Mariannis Ginorio, Ruthelle Frank, Eddie Lee Holloway, Jr., Carl Ellis, Frank Ybarra, Sam Bulmer, and Dartric Davis's claims are typical of the claims of the class, and the representative parties will fairly and adequately protect the interests of the class.

114. Prosecuting separate actions by individual class members would create a risk of: (a) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants; or (b) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to

protect their interests. Additionally, given that Defendants are forcing eligible Wisconsin voters to spend their scarce financial resources in order to cast their votes, Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## CLASS 3

115. Class 3 is defined as all Wisconsin voters who are residents of Wisconsin for voting purposes, who lack any accepted photo ID, and who would be forced to surrender an out-of-state driver's license in order to obtain a free Wisconsin ID card for voting purposes.

116. This class includes—but is not limited to—currently enrolled students at accredited Wisconsin colleges or universities whose colleges or universities have not issued student ID cards that have been found compliant with the photo ID law, and who would be forced to surrender out-of-state driver's licenses in order to obtain free Wisconsin ID cards that they need in order to vote.

117. This surrender rule imposes a material requirement on voters who wish to obtain a free state ID card for voting purposes by forcing persons who are Wisconsin residents for voting purposes, but who possess out-of-state driver's licenses, to choose between paying a fee for a Wisconsin driver's license,

surrendering their driver's license to obtain a free Wisconsin state ID card, or losing their right to vote.

118. This class is sufficiently numerous such that joinder of all members is impracticable. There are questions of law and questions of fact that are common to the class. Class 3 Representatives Anna Shea, Matthew Dearing, Max Kligman, Samantha Meszaros, Steve Kvasnicka, and Sarah Lahti's claims are typical of the claims of the class, and the representative parties will fairly and adequately protect the interests of the class.

119. Prosecuting separate actions by individual class members would create a risk of: (a) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants; or (b) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

# CLASS 4

120.  Class 4 is defined as: all enrolled students at accredited Wisconsin technical colleges who lack any form of accepted photo ID other than technical college ID cards.

121.  This class is sufficiently numerous such that joinder of all members is impracticable.  There are questions of law and questions of fact that are common to the class.  Class 4 Representatives Domonique Whitehurst, Edward Hogan, and Sarah Lahti's claims are typical of the claims of the class, and the representative parties will fairly and adequately protect the interests of the class.

122.  Prosecuting separate actions by individual class members would create a risk of: (a) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants; or (b) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.  Additionally, Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## CLASS 5

123.  Class 5 is defined as: all eligible Wisconsin voters who lack accepted photo ID, must obtain one or more primary documents that DMV accepts to obtain a Wisconsin state ID card, including but not limited to certified <u>and</u> accurate copies of birth, marriage, and name change certificates or records or of the non-existence thereof, and will be required to pay one or more fees to obtain these documents.

124.  This class is sufficiently numerous such that joinder of all members is impracticable.  There are questions of law and questions of fact that are common to the class.  Class 5 Representatives Ruthelle Frank, Shirley Brown, Nancy Lea Wilde, Eddie Lee Holloway, Jr., Mariannis Ginorio, Frank Ybarra, Sam Bulmer, Carl Ellis, Pamela Dukes, and Dartric Davis's claims are typical of the claims of the class, and the representative parties will fairly and adequately protect the interests of the class.

125.  Prosecuting separate actions by individual class members would create a risk of: (a) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants; or (b) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.  Additionally, by requiring eligible Wisconsin voters to pay

58

a fee in order to obtain a document DMV insists they produce to obtain a state ID card, Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## CLASS 6

126.  Class 6 includes all veterans of a uniformed service of the United States who are eligible Wisconsin voters, lack accepted photo ID, and possess a Veterans Identification Card ("VIC") issued by the U.S. Department of Veterans Affairs.

127.  This class is sufficiently numerous such that joinder of all members is impracticable.  There are questions of law and questions of fact that are common to the class.  Plaintiffs and Class 6 Representatives Sam Bulmer, Carl Ellis, and Rickie Lamont Harmon's claims are typical of the claims of the class, and the representative parties will fairly and adequately protect the interests of the class.

128.  Prosecuting separate actions by individual class members would create a risk of: (a) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants; or (b) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to

protect their interests. Additionally, by refusing to accept U.S. government-issued Veterans Identification Cards, Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## CLASS 7

129. Class 7 is defined as: all eligible African-American and Hispanic/Latino voters in the State of Wisconsin who lack accepted photo ID.

130. Subclass 7.1 is defined as: all eligible African-American and Hispanic/Latino voters in Milwaukee County, Wisconsin who lack accepted photo ID.

131. This class is sufficiently numerous such that joinder of all members is impracticable. There are questions of law and questions of fact that are common to the class. Class 7 and Subclass 7.1 Representatives Shirley Brown, Eddie Lee Holloway, Jr., Mariannis Ginorio, Frank Ybarra, Barbara Oden, Carl Ellis, Rickie Lamont Harmon, Pamela Dukes, Dartric Davis, DeWayne Smith, and Domonique Whitehurst's claims are typical of the claims of the class, and the representative parties will fairly and adequately protect the interests of the class.

132. Prosecuting separate actions by individual class members would create a risk of: (a) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants;

or (b) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Additionally, Defendants have subjected voters to a fundamentally unfair electoral system and therefore acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## CLAIMS

### COUNT ONE: Violation of the Fourteenth Amendment [Class 1]

133. The allegations contained in paragraphs 1 through 109 are hereby incorporated in Count One of the complaint as if set forth herein.

134. The Fourteenth Amendment to the U.S. Constitution provides in relevant part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." It prohibits the imposition of severe burdens on the right to vote unless they are narrowly drawn to advance a state interest of compelling importance. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

135. Eligible Wisconsin voters in Class 1 lack one or more primary documents required to obtain a Wisconsin state ID card and are subjected to

multiple legal and/or systemic practical barriers to obtaining the ID card under GAB's implementation of the photo ID law and DMV's restrictive regulatory scheme.

136.  Since voters in this class are unable to obtain one or more of the necessary primary documents or are otherwise burdened by the legal and/or systemic practical barriers encountered in this difficult process, they cannot obtain a photo ID and therefore cannot vote in Wisconsin.

137.  The burdens imposed on Class 1 members' fundamental right to vote are severe and not narrowly tailored to any compelling governmental interest.  By imposing a severe and undue burden on the right to vote, Defendants have violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

## COUNT TWO: Violation of the Fourteenth Amendment [Class 2]

138.  The allegations contained in paragraphs 1-105 and 110-114 are hereby incorporated in Count Two of the complaint as if set forth herein.

139.  The Fourteenth Amendment to the U.S. Constitution provides in relevant part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  It prohibits the imposition of severe burdens on the right

to vote unless they are narrowly drawn to advance a state interest of compelling importance. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

140. For the hundreds of thousands of eligible low-income and poor Wisconsin voters, paying the underlying, often multiple, fees and expenses, including transportation costs, to obtain a Wisconsin state ID card constitutes a burden on the right to vote, which is at a minimum substantial.

141. The burden imposed on these voters is severe and not narrowly tailored to advance any compelling governmental interest.

142. Accordingly, the photo ID law imposes an undue burden on members of Class 2 which is at a minimum substantial and, therefore, violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment as applied to Class 2.

## COUNT THREE: Violation of the Twenty-Fourth Amendment and Equal Protection Clause of the Fourteenth Amendment [Class 3]

143. The allegations contained in Paragraphs 1-105 and 115-119 are hereby incorporated in Count Three of the complaint as if set forth herein.

144. The Twenty-Fourth Amendment to the United States Constitution provides: "The right of citizens of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice

President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any state by reason of failure to pay any poll tax or other tax."

145. The Twenty-Fourth Amendment prohibits states from conditioning the right to vote in federal elections on the payment of a tax or fee, or imposing on federal voters an additional condition—or material requirement—that would not apply if they paid such a tax or fee. *Harman v. Forssenius*, 380 U.S. 528, 538-42 (1965). Poll taxes on the right to vote in state elections are unconstitutional under the Equal Protection Clause of the Fourteenth Amendment. *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 666-68 (1966).

146. Wisconsin residents who possess and wish to retain an out-of-state driver's license and who lack all the other accepted forms of photo ID will not be able to obtain free Wisconsin ID cards for voting purposes without surrendering their out-of-state driver's licenses.

147. The compulsory surrender of an out-of-state driver's license constitutes a material requirement imposed on an eligible voter who refuses to forfeit his/her right to vote without paying an unconstitutional poll tax.

148. Therefore, as applied to Class 3, the photo ID law violates the Twenty-Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

## COUNT FOUR: Violation of the Equal Protection Clause of the Fourteenth Amendment [Class 4]

149.  The allegations contained in Paragraphs 1-105 and 120-122 are hereby incorporated in Count Four of the complaint as if set forth herein.

150.  The Equal Protection Clause of the Fourteenth Amendment prohibits the states from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  It forbids the imposition of severe burdens on the right to vote unless they are narrowly drawn to advance a state interest of compelling importance, and requires that any state election law which imposes reasonable, nondiscriminatory restrictions on the right to vote be justified by the state's important regulatory interests.  *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

151.  The GAB has construed the photo ID law to authorize the use of accredited technical college ID cards for voting purposes.  However, the ultimate disposition of this rule has been thrown into considerable doubt for the reasons described herein.  The administrative review process still threatens to result in that exclusion.

152.  This differential treatment of student ID cards from accredited 2-year colleges and student ID cards from accredited technical colleges is wholly

arbitrary, not narrowly drawn to advance a compelling state interest, and not even justified by a merely important regulatory interest.

153.  Accordingly, since it lacks a rational basis, the exclusion of technical college ID cards is unconstitutional under the Fourteenth Amendment.

## COUNT FIVE: Violation of the Twenty-Fourth Amendment
## and the Equal Protection Clause of the Fourteenth Amendment [Class 5]

154.  The allegations contained in Paragraphs 1-105 and 123-125 are hereby incorporated in Count Five of the complaint as if set forth herein.

155.  The fee(s) required to obtain certified and accurate copies of primary documents DMV requires before issuing a state ID card, such as birth, marriage, or name change certificates or records or proof of the non-existence thereof, constitute(s) an unconstitutional poll tax for eligible Wisconsin voters in this class.

156.  Accordingly, the photo ID law is unconstitutional as applied to members of Class 5.

## COUNT SIX: Violation of the Equal Protection Clause of the Fourteenth
## Amendment [Class 6]

157.  The allegations contained in Paragraphs 1-105 and 126-128 are hereby incorporated in Count Six of the complaint as if set forth herein.

158.  The Equal Protection Clause of the Fourteenth Amendment prohibits the states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

159.  Veterans Identification Cards ("VICs") contain the name and photo of the veteran and are issued by a U.S. government agency.

160.  The photo ID law does not permit the use of VICs to vote.

161.  This differential treatment of VICs and other forms of accepted photo ID under the law bearing the voter's legal name and a photograph, including other forms of photo ID issued by a federal agency, is wholly arbitrary and lacks a rational basis.

162.  Accordingly, the exclusion of Veterans Identification Cards from the list of accepted photo IDs is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment.

## COUNT SEVEN: Violation of Equal Protection Clause of the Fourteenth Amendment

163.  The allegations contained in Paragraphs 1-105 and 129-132 are hereby incorporated in Count Seven of the complaint as if set forth herein.

164. The Equal Protection Clause of the Fourteenth Amendment prohibits the states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

165. The Equal Protection Clause of the Fourteenth Amendment guarantees that "[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000); *see also Baker v. Carr*, 369 U.S. 186, 208 (1962) ("A citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution . . . .") (citing cases). "Uniform rules" and "specific standards" are necessary to guarantee equal treatment of voters. *Bush*, 531 U.S. at 106-07.

166. By vesting control over the process of obtaining Act 23's accepted photo ID of last resort with the DMV Defendants, Defendants have forced voters to navigate the DMV's complex bureaucratic rules and procedures, some of which are written, fixed, and readily accessible to voters, and some of which are unwritten, variable, and not readily accessible to voters.

167. The Wisconsin DMV, on the one hand, ostensibly applies a set of documentary proof requirements with clearly enumerated items that satisfy each of the requirements set forth in Wis. Admin. Code Trans § 102.15 and then, on the other hand, upon information and belief, arbitrarily offers certain ID card

applicants the option to satisfy these proof requirements with alternative certifications and forms of documentary proof that have not been reduced to writing and publicly listed and/or advertised. To the extent these alternative means to satisfy the name and date of birth, citizenship, and/or other documentary proof requirements to obtain a state ID card are in fact being implemented, the determinations as to who may use these alternative procedures and whether to approve the applications are characterized by standard-less discretion and not governed by a set of definite and specific rules, standards, policies, or procedures.

168. Upon information and belief, DMV provides no meaningful notice of any alternative procedures that may exist, and DMV does not have any uniform standards, rules, or policies to guide the outcomes of any such procedures.

169. As a result of these statewide inconsistencies and ad hoc informal rulings on ID card applications, eligible Wisconsin voters are subjected to arbitrary and disparate treatment that differently values the votes of similarly situated voters in Wisconsin.

170. These inconsistent procedures may also have a disparate negative impact on minority voters in Milwaukee County and the State of Wisconsin.

171. By subjecting similarly situated eligible Wisconsin voters to arbitrary and disparate treatment, failing to set forth any definite and specific rules, standards, or procedures by which to constrain DMV employee discretion in

determinations that directly affect the right to vote, and failing to provide adequate and uniform notice of rules, policies, practices, and standards affecting the process of obtaining a state ID card, Defendants have violated the Equal Protection Clause of the Fourteenth Amendment.

## COUNT EIGHT: Violation of the Due Process Clause of the Fourteenth Amendment

172. The allegations contained in Paragraphs 1 through 105, as well as the allegations supporting Count Seven, are hereby incorporated in Count Eight of the complaint as if set forth herein.

173. The Due Process Clause of the Fourteenth Amendment prohibits the states from "deprive[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

174. The Due Process Clause of the Fourteenth Amendment is violated where an electoral system is marked by fundamental unfairness. *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008); *Griffin v. Burns*, 570 F.2d 1065, 1078-79 (1st Cir. 1978) ("[D]ue process is implicated where the entire election process including as part thereof the state's administrative and judicial corrective process fails on its face to afford fundamental fairness."); *Black v. McGuffage*, 209 F. Supp. 2d 889, 899-901 (N.D. Ill. 2002).

175.  The photo ID law has forced DMV officials and employees to serve as gatekeepers to the ballot box.  DMV has no prior experience handling the votes of eligible Wisconsin residents or even voter registration.

176.  Because of the photo ID law, the Wisconsin DMV has, or should have, rapidly implemented procedures for and retrained its employees on the photo ID law.

177.  Wisconsin DMV has failed to adequately implement a uniform, consistently applied scheme for providing free photo ID to voters.  This failure directly affects the rights of eligible Wisconsin voters to receive the photo ID that state law mandates they have.

178.  Wisconsin DMV has treated similarly situated voters in an arbitrary and disparate manner due to its failure to establish and implement uniform and definite rules, standards, and procedures to process voter ID card applications.  DMV has also failed to provide meaningful and adequate notice of its requirements, rules, standards, and policies to Wisconsin voters.

179.  Additionally, the photo ID law, as implemented by Defendants, compels eligible Wisconsin voters to interact with multiple other federal, state, and local agencies, which have also subjected similarly situated eligible Wisconsin voters to arbitrary and inconsistent treatment and the exercise of standard-less discretion.

180. The GAB and DMV's efforts in terms of public information and education have been insufficient to meaningfully and adequately inform Wisconsin voters about the radical and complex legal changes wrought by Act 23 in a timely fashion.

181. Accordingly, Defendants have created an electoral system that is fundamentally unfair and therefore violates the Due Process Clause of the U.S. Constitution.

## COUNT NINE: Vote Denial in Violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 [Class 7]

182. The allegations contained in Paragraphs 1 through 105 and 129 through 132 are hereby incorporated in Count Nine of the complaint as if set forth herein.

183. Section 2 of the Voting Rights Act provides:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color. . . .

(b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

42 U.S.C. § 1973.

184.  African-American and Hispanic/Latino voters in Milwaukee County, Wisconsin and, upon information and belief, in the State of Wisconsin disproportionately lack accepted photo ID and disproportionately lack the primary documents DMV accepts as part of the application process for a state ID card for voting purposes, when compared to their white counterparts.  Numerous minority voters are unable to obtain accepted photo ID and will be barred from voting.

185.  Since minority voters will be disproportionately barred from voting under this strict photo ID requirement, the political processes in Milwaukee County, Wisconsin and, upon information and belief, the State of Wisconsin are not equally open to participation by African-American and Hispanic/Latino voters, and they will therefore have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

186.  Minority residents of Milwaukee County, Wisconsin and in the State of Wisconsin have suffered the effects of discrimination in the areas of education, employment, housing, and health, which have hindered their ability to participate effectively in the political process.  S. Rep. No. 97-417, 97th Cong., 2d Sess. (1982), at 28-29.

187.  The photo ID law is a qualification to voting or a standard, practice, or procedure with respect to voting which is denying the right to vote to individual

plaintiffs on account of race or color in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.

## COUNT TEN: Vote Dilution in Violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 [Class 7]

188.  The allegations contained in Paragraphs 1 through 105 and 129 through 132, as well as the allegations supporting Count Nine, are hereby incorporated in Count Ten of the complaint as if set forth herein.

189.  Section 2 of the Voting Rights Act provides:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color. . . .

(b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

42 U.S.C. § 1973.

190.  African-American and Hispanic/Latino voters in Milwaukee County, Wisconsin and, upon information and belief, in the State of Wisconsin, disproportionately lack accepted photo ID and disproportionately lack the primary documents DMV accepts as part of the application process for a state ID card for

voting purposes, when compared to their white counterparts. As a result, these minority voters are less likely to be able to obtain accepted photo ID than their white counterparts and thus less likely to see their ballots counted.

191. The photo ID law is a qualification to voting or a standard, practice, or procedure with respect to voting which, based on the totality of the circumstances, will render elections in Milwaukee County, Wisconsin and in the State of Wisconsin not equally open to participation by African-American and Hispanic/Latino voters, in that they will have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

192. These disparities dilute the voting strength of African-American and Hispanic/Latino voters in Milwaukee County, Wisconsin and the State of Wisconsin and thus impair their ability to elect representatives of their choice.

193. There is available an alternative election scheme that does not have a disproportionate negative impact on the opportunity of African-American and Hispanic/Latino voters in Milwaukee County, Wisconsin and, upon information and belief, the State of Wisconsin to participate in the political process and elect representatives of their choice, when compared to other members of the electorate.

194. The photo ID law increases the probability that minority voters' ballots will not be counted and thus dilutes African Americans' and Latinos' votes in

Milwaukee County, Wisconsin and, upon information and belief, in the State of Wisconsin on account of race or color in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.

195.  Minority residents of Milwaukee County, Wisconsin and in the State of Wisconsin have suffered the effects of discrimination in the areas of education, employment, housing, and health, which have hindered their ability to participate effectively in the political process.  S. Rep. No. 97-417, 97th Cong., 2d Sess. (1982), at 28-29; *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986) ("The essence of a [Section] 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by [minority] and white voters to elect their preferred representatives.").

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that:

(i)     The Court declare the photo ID law unconstitutional as applied to Class 1 under the Equal Protection and Due Process Clauses of the Fourteenth Amendment and enjoin the photo ID law as applied to members of Class 1;

(ii)    The Court declare the photo ID law unconstitutional as applied to Class 2 under the Equal Protection and Due Process Clauses of the Fourteenth

Amendment and enjoin the photo ID law as applied to members of Class 2;

(iii)   The Court declare the photo ID law unconstitutional as applied to Class 3 under the Twenty-Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment and enjoin the photo ID law as applied to members of Class 3;

(iv)   The Court declare the photo ID law unconstitutional as applied to Class 4 under the Equal Protection Clause of the Fourteenth Amendment and enjoin the photo ID law as applied to members of Class 4;

(v)   The Court declare the photo ID law unconstitutional as applied to Class 5 under the Twenty-Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment and enjoin the photo ID law as applied to members of Class 5;

(vi)   The Court declare the photo ID law unconstitutional as applied to Class 6 under the Equal Protection Clause of the Fourteenth Amendment and enjoin the photo ID law as applied to members of Class 6;

(vii)   The Court declare the photo ID law violates the Equal Protection Clause of the Fourteenth and enjoin the photo ID law;

(viii)   The Court declare the photo ID law violates the Due Process Clause of the Fourteenth Amendment and enjoin the photo ID law;

Case 2:11-cv-01128-jdp   Filed 03/02/12   Page 77 of 79   Document 31

(ix) The Court declare the photo ID law violates Section 2 of the Voting Rights Act (42 U.S.C. § 1973) as applied to Milwaukee County, Wisconsin and the State of Wisconsin, and enjoin the enforcement of the photo ID law in Milwaukee County, Wisconsin and the State of Wisconsin;

(x) Award Plaintiffs their reasonable attorneys' fees, reasonable expert fees, and costs pursuant to 42 U.S.C. §§ 1988, 1973*l*(e) and Fed. R. Civ. P. 54(d); and

(xi) Grant such other and further relief as this Court deems just.

Respectfully submitted this 2nd day of March, 2012,

/s Laurence J. Dupuis
Laurence J. Dupuis
Bar No.: 1029261
Karyn Rotker
Bar No.: 1007719
American Civil Liberties Union of Wisconsin
207 E. Buffalo Street, Suite 325
Milwaukee, WI 53202-5774
Phone: (414) 272-4032
Fax: (414) 272-0182
ldupuis@aclu-wi.org
krotker@aclu-wi.org

M. Laughlin McDonald
Jon Sherman
Nancy Abudu
American Civil Liberties Union Foundation, Inc.
230 Peachtree Street, Suite 1440

Case 2:11-cv-01128-jdp   Filed 03/02/12   Page 78 of 79   Document 31

Atlanta, GA 30303
Phone: (404) 523-2721
Fax: (404) 653-0331
lmcdonald@aclu.org
jsherman@aclu.org
nabudu@aclu.org

Karen E. Cunningham
Heather Maria Johnson
National Law Center on Homelessness & Poverty
1411 K Street NW, Suite 1400
Washington, DC 20005
Phone: (202) 638-2535
Fax: (202) 628-2737
kcunningham@nlchp.org
hjohnson@nlchp.org

Neil Steiner
Diane Princ
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Phone: (212) 698-3822
Fax: (212) 698-3599
neil.steiner@dechert.com
diane.princ@dechert.com

Craig Falls
Dechert LLP
1775 I Street, NW
Washington, DC 20006-2401
Phone: (202) 261-3373
Fax: (202) 261-3333
craig.falls@dechert.com

Case 2:11-cv-01128-jdp   Filed 03/02/12   Page 79 of 79   Document 31