# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

RUTHELLE FRANK, et al., on behalf of
themselves and all others similarly situated,

        Plaintiffs,

v.

SCOTT WALKER, in his official capacity as
Governor of the State of Wisconsin, et al.,

        Defendants.

Civil Action No. 2:11-cv-01128 (LA)

# PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
# MOTION FOR PRELIMINARY INJUNCTION
# AS TO ELEVEN NAMED PLAINTIFFS

# INTRODUCTION

Plaintiffs respectfully submit this reply memorandum of law in further support of their motion for a preliminary injunction. Eleven named Plaintiffs seek to enjoin enforcement of the Wisconsin photo ID law as to them and/or to compel Defendants to permit them to vote by alternative means, such as through the use of an affidavit of identity or, as to certain Plaintiffs, by using their Veterans' Identification Cards as photo ID.[1] Defendants do not dispute that Plaintiffs are United States citizens and residents of Wisconsin who are entitled to vote, or that the photo ID law will have the effect of preventing Plaintiffs from exercising their constitutional right to vote. Nevertheless, Defendants argue that no "special treatment" can be provided: that is, that regardless of the hardships encountered, no Plaintiff should be allowed to vote without ID. There can be no dispute that the photo ID law will strip Plaintiffs of their Constitutional rights and that its enforcement as to them should be enjoined.

Defendants also contend that the relief Plaintiffs seek is unnecessary because two state courts have already enjoined enforcement of the photo ID law on the grounds that it violates the Wisconsin constitution. According to Defendants, because the photo ID law is not currently being enforced and the period for requesting absentee ballots and for early in-person absentee voting has commenced, an injunction here is unnecessary because Plaintiffs could simply vote in either of those two alternative ways. Defendants' argument is disingenuous at best: Defendants have appealed those injunctions and are currently seeking a stay of those injunctions in two separate Wisconsin Courts of Appeal. And Defendants' counsel specifically warned Plaintiffs' counsel – but failed to advise the Court in their opposition brief – that in the event the state court

---

[1] Unless otherwise indicated, terms used herein shall have the same meaning given them in Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction a to Eleven Named Plaintiffs ("Pls.' Br.").

1

injunctions were stayed, they would not guarantee that ballots submitted without photo ID by one of those alternative methods would be counted. Consequently, Plaintiffs cannot simply withdraw their Motion, although a decision on the instant Motion is necessary only to the extent that both state court injunctions are stayed or reversed.[2]

Defendants' argument that the burden on Plaintiffs' exercise of their right to vote is not caused by photo ID law itself but only by the pre-existing DMV processes onto which Act 23 was grafted fares no better. The photo ID law allows essentially no exceptions to the requirement that qualified electors in Wisconsin can vote only with an accepted form of photo ID, and Wisconsin laws and regulations make it severely burdensome, if not impossible, for Plaintiffs to obtain an accepted form of photo ID. Moreover, Defendants produce no evidence – or much argument – to support their claim that the burdens Act 23 imposes on these Plaintiffs are necessary or cannot be met by less restrictive means.

Similarly, should this Court accept Defendant's argument that Plaintiffs cannot use an affidavit of identity or Veterans Identification Card to vote because those procedures were not included in the statute, Plaintiffs should be allowed to vote by Court order.[3] Finally, Defendants do not dispute that, even if Plaintiffs qualify for a free photo ID, the photo ID law and existing DMV rules and regulations require many of the Plaintiffs to spend money to get the documents

---

[2] While forcing Plaintiffs to vote by absentee ballot in the April 3 election may itself give rise to other claims, Plaintiffs are not asserting such claims at this time. Plaintiffs also note that additional requests for relief, including a Motion for Preliminary Injunction as to class members, will be filed prior to the date of any other Wisconsin elections.

[3] Contrary to Defendants' assertion in their Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction as to Eleven Named Plaintiffs ("Opp'n"), Dkt. 38, at 2, Plaintiffs did not request that this court allow them to vote absentee. Plaintiffs' request was for this Court to either enjoin the law as applied to them, or allow them to vote using affidavits of identity and/or Veterans Identification Cards.

necessary to obtain the photo ID. Imposing those indirect costs for documents that Plaintiffs need *only* to get a photo ID for voting amounts to an unconstitutional poll tax.

## ARGUMENT

### A. Plaintiffs' Request for Relief Will Be Necessary if the Injunctions are Stayed

Defendants are actively seeking stays before the April 3 elections in two state court cases that have enjoined the voter ID law.[4] Although the trial courts in both cases have denied the stays, Defendants have filed motions to stay the injunctions pending appeal with the appeals courts in both cases. Opp'n Br. 7-7; Attach. A, B. Should the stays be granted, Plaintiffs may lose their rights to vote on April 3, and the votes of any Plaintiffs who cast absentee ballots without ID before April 3 may not be counted. Specifically, Defendants explicitly stated that, in the event Plaintiffs voted by absentee ballot, "if the injunction order is stayed, [Defendants] also cannot guarantee that some group will not bring a legal action challenging GAB's decision to count absentee ballots that were issued without photo ID." Attach. C. Absent a stipulation that Plaintiffs' votes will be counted if they vote absentee – a stipulation Defendants refuse to provide – the relief Plaintiffs seek will remain necessary if the state court injunctions are lifted before the April 3 election.

### B. Act 23 Violates the Fourteenth Amendment

#### 1. Act 23 Violates the Fourteenth Amendment as Applied to Plaintiffs

To resolve constitutional challenges to a state election procedure, a court:

must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It

---

[4] *Milwaukee Branch of NAACP et al. v. Scott Walker et al.*, Appeal No. 2012AP000557-LV, Dane Co. Circ. Ct. No. 11-cv-5492 ("NAACP case"), and *League of Women Voters of Wisconsin et al. v. Scott Walker et al.*, Appeal No. 2012AP000584, Dane Co. Circ. Ct. No. 11-cv-4669 ("League case").

3

then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). Similarly,

[a] court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (internal citations omitted). *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), confirmed that there is no "litmus test for measuring the severity of a burden that a state law imposes on…an individual voter, or a discrete class of voters. However slight that burden may appear...it must be justified by relevant and legitimate state interests '*sufficiently weighty to justify the limitation.*'" *Id.*, 553 U.S at 191 (internal citations omitted; emphases added).

Thus, contrary to Defendants' argument that *Crawford* forecloses evaluation of the state's purported justification for the photo ID law, Opp'n 17, *Crawford* in fact *requires* this Court to consider the state interests and the burden on an individual voter or discrete class of voters, and evaluate whether the state interests justify the burden. *See also id.,* 553 U.S. at 204 ("The state interests identified as justifications for [the Indiana photo ID law] are both neutral and sufficiently strong to require us to reject petitioners' *facial* attack on the statute. *The application of the statute to the vast majority of Indiana voters* is amply justified by the valid interest in protecting 'the integrity and reliability of the electoral process.'" (internal citations omitted, emphasis added)).

Thus, the state's purported interests in this case must be balanced, not against the law's application to the majority of voters who are not burdened by the photo ID law, but to Plaintiffs who, Defendants concede, are concretely and specifically burdened. Moreover, unlike the Indiana voters in *Crawford*, Act 23 will completely disfranchise these Plaintiffs.[5] The character and magnitude of the injury to Plaintiffs therefore is profound and unquestionably more severe than the burden and injury in *Crawford*.

At the same time, Act 23 entirely fails to further the state's articulated interests. For example, the photo ID cannot keep felons and non-citizens from voting, because members of those groups, if they have the underlying documentation, can obtain Wisconsin driver's licenses or photo ID cards. That the state's purported interest is almost entirely speculative and not advanced by the photo ID law undermines the "legitimacy and strength" of the state interests, *Anderson,* 460 U.S. at 789, especially when balanced against the total denial of Plaintiffs' right to vote. The "legitimacy and strength" of the state interests is further undermined by the fact that other extensive and more effective alternative anti-fraud measures have been and are being implemented, making it clear that there exist far less restrictive alternatives to depriving Plaintiffs of their Constitutional rights. *See id.*; Pls.' Br. 19-22.

As applied to the facts here, Wisconsin's purported state interests in the photo ID law come nowhere close to justifying the complete disenfranchisement of these Plaintiffs.

---

[5] Indiana voters without photo ID *are* allowed to cast ballots that will be counted if they sign an affidavit of indigency at the clerk's office within 10 days after the election. *Crawford*, 553 U.S. at 186. No such fail-safe option exists in Wisconsin.

### 2. Act 23 Requires Plaintiffs to Interact With DMV

Defendants concede that "[i]t is undeniable that Plaintiffs face unique, peculiar, individualized, and distinct burdens to obtain a Wisconsin driver's license or state photo identification card."[6] Opp'n 3. Yet Defendants pose no alternative: they argue that the no-exceptions photo ID law must be implemented as written, regardless of these burdens. Opp'n 29. That blanket assertion is not a meaningful response to the impending threat of disfranchisement.

Except with regard to two Plaintiffs, Defendants do not dispute the severe burden on Plaintiffs' right to vote. With respect to Plaintiff Harmon, the Defendants contend that he has not undertaken efforts to obtain acceptable photo ID; however, as discussed more fully *infra* Sec. C, the state's exclusion of his VIC as accepted photo ID for voting is arbitrary and irrational. Regarding Plaintiff Frank, Defendants now hypothesize that she could get an ID if she paid for and submitted her incorrect birth certificate. Opp'n 11. Tellingly, Defendants do not take that position with respect to other Plaintiffs who suffer the identical problem of having an incorrect birth certificate, including Plaintiff Holloway, and in fact the DMV refused to issue photo ID to him.[7] Pls.' Br. 8. For Plaintiffs Brown, Bulmer, Dukes, Ellis, Ginorio, Holloway, Oden, Smith

---

[6] Defendants claim, without evidence, that there is a burden on a "vanishingly small" number of voters. Opp'n 2. Whatever the overall number of voters burdened by the law, these Plaintiffs fall in that group. As important, even if the law burdened only a small number of voters, that would not save it from a finding of unconstitutionality. *See Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) ("a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction"); *Crawford*, 553 U.S. at 191 (a court must measure "the severity of a burden that a state law imposes on . . . an individual voter"). Plaintiffs will address numerosity in their Motions for Class Certification and Preliminary Injunction scheduled to be filed on April 15.

[7] While Defendants argue that Frank "would" get an ID, the Declaration of Jim Miller, Dkt. 39, is more equivocal, opining only that "she would *likely* be able to obtain a Wisconsin state identification card from DMV free of charge for purposes of voting." ¶6 (emphasis added). But Miller admits that in practice he does not examine the documents and that "the final call of [sic] the issuance of a product comes from the local [DMV] supervisor." ¶1. And the actual

6

and Wilde, Defendants have no response at all to the burdens Act 23 imposes – other than a strict construction of Act 23 that would deprive these Plaintiffs of their right to vote.

Defendants also claim that the ID-related burdens are not caused by Act 23, but by "DMV's pre-existing procedures for procuring driver's licenses and state photo identification cards, not upon any requirement for voting created by Act 23." *Id.* at 2-3. Defendants therefore argue that if relief is granted it should only apply to the DMV process, not to Act 23 itself. Whether or not DMV's procedures pre-date Act 23, it is Act 23 that forces Plaintiffs to interact with DMV and its burdensome procedures in order to obtain the credentials that will allow them to vote. Absent Act 23, Plaintiffs could exercise their rights to vote without having to jump through the strict and multiple hoops that DMV's rules impose. Act 23 made photo ID cards for voting purposes free for those persons who had the documentation necessary to obtain a photo ID, but did nothing to lessen the burden on others, like Plaintiffs, who do not have and cannot reasonably obtain such documentation. Act 23's overly restrictive limitations on accepted forms of photo ID directly force Wisconsin citizens who are simply seeking to exercise their rights to vote to subject themselves to DMV's laws, regulations and policies. It is Act 23 that needs to be enjoined as applied to the Plaintiffs, not transportation regulations that come into play only because of Act 23's mandates.[8]

---

experience of Plaintiff Holloway shows that, in fact, the DMV is not as accommodating to persons with minor errors in their birth certificates as Miller predicts or Defendants contend it would be.

[8] Defendants also argue, Opp'n 29-30, that this Court cannot require them to implement an affidavit of identity or allow the use of Veterans Identification Cards – procedures expressly recommended by Defendant Kennedy and used in multiple states – because those alternatives are not part of Act 23. Yet Defendants also claim, Opp'n 3, that this Court *can* enjoin transportation regulations as applied to Plaintiffs and, presumably, require DMV to issue photo ID to Plaintiffs without documentation, a procedure never contemplated by state law.

7

### 3. Defendants' Interests are Conjectural and Not Supported by the Record

Defendants argue that Act 23 is necessary to prevent fraud and increase voter confidence. Defendants do not claim that photo ID increases public confidence other than by preventing fraud. Opp'n 19-20. As to these eleven named Plaintiffs, there is absolutely no assertion that they are not who they say they are, or that they are for any reason other than lack of photo ID ineligible or unable to vote.

As to fraud prevention generally, Defendants claim that impersonation fraud may exist but is difficult to detect, and that the infrequency of prosecutions does not mean such fraud does not exist. Opp'n 17-18. It is not only the absence of prosecution, however, that confirms the absence of impersonation fraud. As noted in Plaintiffs' Brief at 19-20, federal laws implemented beginning in 2006 – *after* the record in *Crawford* was made – require a person registering to vote to provide a date of birth and either a license or ID card number or the last four digits of a social security number.[9] Thus an individual purporting to impersonate another would not only have to know that voter's name but also the voter's date of birth and identifying number, rendering a successful impersonation effort even more unlikely. The existence of these matching and verification procedures also shows that the state's interest can be achieved in a less restrictive manner than requiring ID from persons for whom it is a burden to obtain it. *Anderson,* 460 U.S. at 789. Defendants also rely on *Crawford*'s mention that impersonation fraud had purportedly occurred in other locations to justify applying this law to Plaintiffs. Opp'n 18. Yet the *Crawford* court itself acknowledged that such claims were overstated, and that there were at most only "scattered instances" of impersonation fraud. *Crawford*, 553 U.S. at 195-96 n.12. Further, even

---

[9] *See also* Kennedy Dep. Tr., Dkt. 34-1, 84:21-24 (confirming collection of date of birth, as well as license or social security number).

those "scattered instances" are likely overstated. For example, although the Court referenced alleged election irregularities in Wisconsin in 2004 as part of its anti-fraud justification, *id.*, the *final* conclusions of the preliminary investigation the lower court cited established that the Wisconsin allegations were related to administrative errors, not fraud.[10]

Defendants also claim that voter ID would deter felons and non-citizens from voting. Opp'n 19. But Wisconsin law allows felons and non-citizens to obtain Wisconsin driver's licenses and photo ID cards. *See, e.g.*, Wis. Stat. § 343.14(2)(er)2 (non-citizen license and ID card documentation requirements); § 343.06 (persons not to be licensed). Defendants do not address the efficacy of the anti-felon-voting and other anti-fraud changes that Wisconsin has implemented in the last decade, nor provide any evidence that non-citizen voting has even occurred. *See*, Pls.' Br. 20-21. These purported state interests are therefore directly contradicted by the evidence and by state law.

Defendants also assert, again without explanation or evidence and without responding to the discussion of this issue in Plaintiffs' Brief at 21, that photo ID would prevent voters who move out of Wisconsin from voting and would prevent double voting across state lines. Opp'n 19. The lack of any discussion of the scope of these purported interests, Defendants' failure to provide any evidence to support assertions that these violations even exist, and Defendants' failure to even articulate how Act 23 would further these interests, shows that the state's interest is purely conjectural. *See, e.g.*, *Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664

---

[10] *Crawford* cited district court findings issued *sub nom. Indiana Democratic Party v. Rokita,* 458 F.Supp.2d 775, 793-94 (S.D. Ind. 2006) ("State's Ex. 4, pp. 2-4 (preliminary joint task force findings describing instances in the 2004 elections in Wisconsin where individuals voted twice by using fake names and addresses and citizens who told investigators that they did not vote, even though the report showed that someone voted in their names)."). As discussed in Plaintiffs Brief at n.15, these irregularities were later found to be due to administrative errors, not to fraud.

9

(1994) ("[The government" must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way."); *Bernal v. Fainter*, 467 U.S. 216, 228 (1984) ("Without a factual underpinning, the State's asserted interest lacks the weight we have required of interests properly denominated as compelling.").

### C. Act 23 Arbitrarily Excludes VICs

In seeking to defend the exclusion of VICs from the allowable forms of accepted photo ID, Defendants hypothesize that VICs are not permitted because "[w]ithout an expiration or issuance date, it is not possible to judge when the VIC was created or issued to determine whether the photograph on it is current as to provide an accurate, current visual depiction of the cardholder." Opp'n 21. However, other forms of accepted photo ID – including some military and tribal ID cards – also lack issuance and/or expiration dates. Berrien Decl. ¶¶ 6-9; Martin Decl. ¶¶ 5-6; Attach. D. Further, Wisconsin drivers' licenses and photo ID cards are valid for eight years, and, under a separate law also passed in 2011, may be renewed by mail or electronically for an additional eight-year period. Wis. Stat. § 343.20(1)(a); Wis. Admin. Code § TRANS 102.16(3); 2011 Wis. Act 32, § 3181. Defendants cannot seriously dispute that many, if not most, individual's appearances are likely to change significantly over a 16-year period. Assuring that the VIC is an "accurate, current visual depiction" is a requirement that can be met in a far less burdensome manner by the Act 23 provision requiring elections officials to "verify that any photograph appearing on…[any proof of identification] document reasonably resembles the elector." Wis. Stat. § 6.79(2)(a).[11]

---

[11] Plaintiffs also note that Act 23 requires mail-in absentee voters to produce ID, despite the complete inability to verify the photograph of those voters, a fact that also undercuts Defendants' assertion of the need to match the photograph to the individual voting.

In claiming, Opp'n 20-21, that they need only show any conceivable state of facts justifies the exclusion of VICs, Defendants rely on *McGowan v. Maryland*, 366 U.S. 420 (1961). *McGowan,* however, involved Sunday business closing laws, not the Constitutional right to vote. Nor do the other cases Defendants cite for this proposition involve fundamental Constitutional rights. *Eby-Brown Co., LLC v. Wisconsin Dept. of Agriculture*, 295 F.3d 749 (7th Cir. 2002), addressed state tobacco pricing laws, while *Racine Charter One, Inc. v. Racine Unified School Dist.*, 424 F.3d 677 (7th Cir. 2005), involved charter school student busing. In the voting context, it is the *Anderson* and *Burdick* balancing tests that apply, not the cases Defendants cite. Pls.' Br. 25-26.

Plaintiffs Bulmer, Ellis and Harmon have VICs, but no forms of accepted photo ID. While Plaintiff Harmon might be able to obtain an accepted photo ID with the documents in his possession, this still would require him to travel to a DMV office. Defendants do not dispute that Plaintiffs Bulmer and Ellis, both of whom are indigent, would have to incur expenses to obtain the documents they need to obtain ID. Requiring such efforts from any Plaintiff who has a current, valid, secure, federally issued photo ID in his or her possession – a form of ID that the Executive Director of the Government Accountability Board repeatedly recommended be accepted as photo ID for voting purposes – is arbitrary and unreasonable, especially when balanced against the speculative state interests discussed above.

### D.  Act 23 Constitutes a Poll Tax for Plaintiffs Who Must to Pay Money to Vote

Act 23 also forces a class of voters, those without underlying documents that Wisconsin laws and DMV rules require them to have in order to obtain photo ID, to pay money in order to exercise the right to vote. Despite Defendants' assertions, Opp'n 23, 26-27, *Crawford* does not foreclose this claim. In *Crawford*, unlike the present case, there was no record or evidence of

11

"the difficulties faced by indigent voters," including how many indigent voters lacked copies of their birth certificates. *Crawford*, 553 U.S. at 201, 202 n.20. Further, the *Crawford* Court explicitly evaluated the legitimacy of the law in the context of "the statute's broad application to *all* Indiana voters." *Id.* at 202-03. In contrast, this case raises the issue of the burdens – financial as well as non-financial – as applied to voters who lack birth certificates. The present case also differs from the Indiana law upheld in *Crawford* because Indiana law allowed the use of free documents, such as social security benefit statements and Medicare and Medicaid cards, to obtain ID in lieu of birth certificates, *id.* at 199 n.18. Unlike Wisconsin, Indiana law also did not require photo ID for mail-in absentee voting, and did allow indigent voters to cast provisional ballots that would be counted without requiring ID, alternatives that allow voting without paying for a birth certificate. *Id.* at 185-86.

In contrast, Act 23 does not include any mechanism to ensure that Plaintiffs who lack ID can obtain that ID – or vote in some other way – without paying money to do so. Plaintiffs Bulmer, Dukes, Ellis, and Ginorio, all low income and indigent voters, would have to pay money for the birth certificates that DMV requires in order for them to obtain the "free" voter ID. Plaintiff Brown's son already paid money on her behalf in an effort to confirm the non-existence of a birth certificate, and instead was wrongly sent a birth certificate for Plaintiff Brown's sister. Brown's Interrog. Resp., Dkt. 40-16, 9. Plaintiff Holloway would have to pay for court proceedings to amend his incorrect birth certificate. Even Plaintiff Frank, who Defendants claim might get an ID with an incorrect birth certificate, would still have to pay money to obtain that incorrect birth certificate – and then take a chance on whether DMV would accept it.

Forcing a voter to pay a fee for the credential required to vote is either a tax on the right to vote or a material requirement imposed on those who do not pay the poll tax. *Harman v.*

12

*Forsenius*, 380 U.S. 528, 541 (1965). In *Harman*, the court found that the burdensome and confusing procedure to opt out of paying the poll tax was an unconstitutional "material requirement." *See also*, *Gray v. Johnson*, 234 F. Supp. 743 (S.D. Miss. 1964) (requiring voter to obtain document from "the sheriff who is not an election official or the custodian of registration records or data" is an action that "circumscribe[s] or burden[s] or impair[s] or impede[s] the right of a voter to the free and effective exercise and enjoyment of his franchise"). To the extent that the DMV Defendants – none of whom are elections officials – might provide some procedure for some Plaintiffs without birth certificates to obtain photo ID without paying for birth certificates, that procedure is at least as speculative and confusing as the alternative procedures in *Harman*, and may not itself be cost free. *See* Pls.' Br. 8; Wilde Decl., Dkt. 33-11, ¶¶12-13. Further, there is no cost-free procedure available for most of these Plaintiffs.

While not binding on this Court, the conclusion of the Missouri Supreme Court that forcing voters to pay for birth certificates to obtain photo ID was an unconstitutional indirect fee is instructive:

> Although this Court has not previously had occasion to evaluate the validity of putting a direct or indirect price or fee on the franchise under the Missouri Constitution, the United States Supreme Court held, in the context of addressing a $1.50 poll tax: "Wealth or fee-paying has...no relation to voting qualifications; the right to vote is too precious, too fundamental to be so burdened." *Harper* [*v. Virginia State Board of Elections*, 383 U.S. 663, 670 (1966)]. While requiring payment to obtain a birth certificate is not a poll tax, as was the $1.50 in *Harper*, it is a fee that qualified, eligible, registered voters who lack an approved photo ID are required to pay in order to exercise their right to free suffrage under the Missouri Constitution. *Harper* makes clear that all fees that impose financial burdens on eligible citizens' right to vote, not merely poll taxes, are impermissible under federal law.

*Weinschenk v. Missouri,* 203 S.W.3d 201, 213-14 (Mo. 2006). Moreover, in Missouri, as in the present case, the record confirmed the existence of specific, identifiable voters – voters with circumstances very similar to those of Plaintiffs – who would be forced to pay for birth

13

certificates to exercise their rights to vote, thus distinguishing the situation from the facial challenge at issue in *Crawford*.

> This case stands in stark contrast to the Georgia and Indiana cases, for their decisions were largely based on those courts' findings that the parties had simply presented theoretical arguments and had failed to offer specific evidence of voters who were required to bear these costs in order to exercise their right to vote. Plaintiffs in this case, on the other hand, offered testimony of specific Missouri voters who will have to incur the costs associated with birth certificates and other documentation to acquire a photo ID and vote. Specifically, Plaintiff Weinschenk will have to pay $12 for her birth certificate; Plaintiff von Glahn, who was asked to pay $11 for his "free" non-driver's license required to vote under the statute, will have to pay another $20 for his birth certificate. Others, like Plaintiff Mullaney, may have to incur more substantial costs for additional documentation because their names have changed since their birth. Additionally, elections officials testified to the substantial number of other otherwise qualified Missouri voters who also must pay a fee in order to vote.

*Id.* at 214.

There is no question that Act 23, as implemented by Defendants and as applied to Plaintiffs Brown, Bulmer, Dukes, Ellis, Frank, Ginorio, and Holloway, and possibly as applied to Plaintiff Wilde, all qualified, eligible, voters, will require payment of a fee to obtain the credential that they must have to vote. Defendants provide no alternative: the fee must be paid, or the right to vote is taken away. In fact, Defendants concede that it would be illegal to charge money for the specific document needed to vote, that a certified copy of a birth certificate is generally required to obtain that ID card, and that the birth certificate costs money. Opp'n 10-11, 14-15, 27-28. Therefore, Act 23 is imposing a fee upon those Plaintiffs who lack birth certificates in order for them to exercise their right to vote. That monetary cost is an unconstitutional poll tax or material requirement that cannot stand.

## **CONCLUSION**

Wisconsin's photo ID law, as applied to these Plaintiffs, will result in the total loss of their rights to vote. Against this deprivation of Constitutional rights is the purported interest of

14

the state in preventing speculative forms of improper voting – many of which the photo ID law will not impact at all. Because the threatened harm to these voters far outweighs any inconvenience the state will face or any demonstrated risk, this Court should issue a preliminary injunction allowing them to vote in upcoming elections.

15

Dated this 26th day of March, 2012.

Respectfully submitted,

/s/ Karyn L. Rotker
KARYN L. ROTKER
State Bar No. 1007719
LAURENCE J. DUPUIS
State Bar No. 1029261
American Civil Liberties Union of Wisconsin Foundation
207 East Buffalo Street, Suite 325
Milwaukee, WI 53202
(414) 272-4032
(414) 272-0182 (fax)
krotker@aclu-wi.org
ldupuis@aclu-wi.org

HEATHER MARIA JOHNSON
KAREN E. CUNNINGHAM
National Law Center on Homelessness & Poverty
1411 K Street NW, Suite 1400
Washington, DC 20005
Phone: (202) 638-2535
Fax: (202) 628-2737
hjohnson@nlchp.org
kcunningham@nlchp.org

M. LAUGHLIN MCDONALD
JON SHERMAN
NANCY ABUDU
American Civil Liberties Union Foundation, Inc.
230 Peachtree Street, Suite 1440
Atlanta, GA 30303
Phone: (404) 523-2721
Fax: (404) 653-0331
lmcdonald@aclu.org
jsherman@aclu.org
nabudu@aclu.org

NEIL STEINER
DIANE PRINC
Dechert LLP
1095 Avenue of the Americas

16

New York, NY 10036-6797
Phone: (212) 698-3822
Fax: (212) 698-3599
neil.steiner@dechert.com
diane.princ@dechert.com

CRAIG FALLS
Dechert LLP
1775 I Street, NW
Washington, DC 20006-2401
Phone: (202) 261-3373
Fax: (202) 261-3333
craig.falls@dechert.com

Attorneys for Plaintiffs.