UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

RUTHELLE FRANK, et al., on behalf of
themselves and all others similarly situated,
    Plaintiffs,

v.                                      Case No. 11-C-1128

SCOTT WALKER, in his official capacity as
Governor of the State of Wisconsin, et al.,
    Defendants.
_____

## DECISION AND ORDER

      Before me now is the defendants' motion to stay, pending appeal, my order granting the plaintiffs' motion for a preliminary injunction. *See* Fed. R. Civ. P. 62(c); Fed. R. App. P. 8(a)(1). The preliminary injunction requires Wisconsin's governor and its election-administration officials to implement a procedure in which voters are excused from having to present photo ID if they execute an affidavit stating that they have been unable to obtain an ID with reasonable effort.

      The standard for granting a stay pending appeal mirrors that for granting a preliminary injunction. *In re A&F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). To determine whether to grant a stay, I consider the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other. *Id.* As with a motion for a preliminary injunction, a "sliding scale" approach applies; the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa. *Id.*

1

Because the legal standard for granting a stay pending appeal mirrors that for granting a preliminary injunction, and because I have already determined that the plaintiffs are entitled to a preliminary injunction, I conclude that the defendants are not entitled to a stay pending appeal. I will largely rest on the reasoning set out in my decision on the motion for a preliminary injunction. In this decision, I will address only those arguments that the defendants make in support of their motion to stay that they did not also make in opposition to the plaintiffs' motion for a preliminary injunction.

First, the defendants argue that a few of the examples I relied on when finding that some plaintiffs will be unable to obtain ID with reasonable effort arose under "old law," *i.e.*, before the Department of Transportation adopted the emergency rules that became effective on May 13, 2016. *See* Emergency Rule 1618. The defendants contend that these examples might have turned out differently had the emergency rules been in effect when the individuals in the examples applied for a free state ID card. However, the emergency rules did not create a brand new procedure for issuing free state ID cards. Rather, as the defendants represented in their original brief, the rules merely "codifie[d] the best practices that have evolved through DMV's experience." Defs. Br. at 3, ECF No. 285. Kristina Boardman, the Administrator of the DMV, confirmed that the emergency rules merely codified the DMV's existing practices and added deadlines for processing an ID application. Boardman Decl. ¶ 39, ECF No. 287. She stated that the "ID petition process," which is codified in the emergency rules and used to assist applicants who do not have documents that prove name, date of birth, and citizenship, "was created in September of 2014." Boardman Decl. ¶ 12; *see also* ¶ 21 (stating that Compliance, Audit, and Fraud Unit "became involved in the ID [petition process] in September of 2014"). Further, the procedures relating to the DMV's name-

2

change affidavit were already in place before they were codified in the emergency rule on May 13, 2016. One DMV report reflects use of this procedure on October 9, 2015. Decl. of Sean Young Ex. 42 at pp.4–5, ECF No. 280. Another report reflects use of this procedure on December 10, 2015. *Id.* Ex. 41 at p.2. The only significant change made by the emergency rules is the requirement that the DMV issue temporary ID card receipts to those who apply for an ID and enter the ID petition process. The emergency rules do not appear to have significantly altered the practices that the DMV has been following since September 2014 for issuing permanent ID cards.

To illustrate this point, I address the three examples that the defendants describe as outdated in their motion for a stay. First, the defendants point to a case report reflecting that, in June 2015, the DMV denied an ID to a person after an investigator with the DMV's Compliance, Audit, and Fraud Unit ("CAFU") failed to locate her birth records. Young Decl. Ex. 59. The defendants note that this occurred before the emergency rules went into effect in May 2016. However, it is clear that at the time of this denial the DMV was already employing the procedures that would later be codified in the emergency rules. Specifically, the ID applicant's case was referred to a CAFU investigator under the ID petition process, just as it would have been under the emergency rules. The investigator then attempted to track down the applicant's birth records, just as he or she would have under the emergency rules, but was unsuccessful. The applicant was unable to produce any other documentation that would allow the DMV to verify her name, date of birth, and citizenship, and thus the DMV denied her application for an ID. Nothing in the emergency rules would have changed this outcome. Under those rules, an applicant must still produce, or a CAFU investigator must be able to find, some documentation to verify the applicant's name,

3

Case 2:11-cv-01128-LA    Filed 07/29/16    Page 3 of 7    Document 311

date of birth, and citizenship.  *See* Emergency Rule 1618, § 8.  In cases where this is not possible, such as the case reflected in Exhibit 59, the applicant will not receive a permanent ID, will not receive any further temporary ID card receipts, and will be precluded from voting in any future elections.  A safety net is needed to preserve the voting rights of individuals who find themselves in this situation.

The other two examples that the defendants describe as outdated involved applicants with name mismatches.  In one case, I noted that the DMV had erred by failing to inform an applicant, in December 2015, that the DMV could notarize his name-change affidavit for free.  Young Decl. Ex. 41.  The defendants now contend that this was not an error because at that time the DMV's free notarization process had not been established.  *See* Defs.' Mot. to Stay at 10, ECF No. 297.  However, the defendants do not cite evidence to support the proposition that the free notary service did not exist in December 2015.  *See id.*  And clearly some procedures relating to the name-change affidavit were in place at that time, as the DMV recorded in its report that it provided a name-change affidavit to the applicant on December 10, 2015.  *See* Young Decl. Ex. 41 at p.2.  Boardman in her declaration does not suggest that the DMV's free notary service was adopted at a different time than when the general name-change affidavit procedures were adopted.  *See* Boardman Decl. ¶¶ 35–38.  Thus, from the evidence submitted at this point in the case, I find that free notary services were available at the DMV in December 2015.  I also note that the emergency rules do not say anything about notary services, and thus those rules did not change any of the DMV's practices relating to such services.

The remaining example involves a case in which the DMV denied, in January 2016, an ID to an applicant after the applicant's daughter tried for months to obtain an

4

ID for him and eventually gave up after the DMV rejected the name-change affidavit she had completed on his behalf. Young Decl. Ex. 42. The defendants again note that this occurred before the emergency rules went into effect. But they do not explain how the result would have been different under the emergency rules. The applicant used the ID petition process and the name-change affidavit process, both of which would later be codified in the emergency rules, and still failed to obtain an ID. The defendants do not identify any way in which the processing of this ID application would have been different had it been filed after the effective date of the new rules.

I also note that the plaintiffs' likelihood of success on the merits would be high even if some of the specific examples I discussed in my opinion might be handled differently today. Even under current law, an ID application will be denied unless the DMV finds "secondary documentation or other corroborating information" establishing that it is more likely than not that the person's name, date of birth, and citizenship, as stated on the person's application for an ID, is correct. *See* Emergency Rule 1618, § 8. Obviously there will be cases in which the DMV is unable to find sufficient documentation or information on behalf of an applicant. Moreover, as I explained at length in my original opinion, inevitably other obstacles will arise that prevent individuals who exercise reasonable effort from obtaining ID. Again, some safety net must be available to protect the voting rights of these individuals.

In their motion to stay, the defendants also contend that the safety net I created has the effect of "abrogat[ing]" the elector-challenge procedures established by Wisconsin law. They refer specifically to Wisconsin Statute § 6.92(1), which provides that "each inspector shall challenge for cause any person offering to vote whom the inspector knows or suspects is not a qualified elector or who does not adhere to any

5

voting requirement under this chapter," and to Wisconsin Statute § 6.925, which provides that "[a]ny elector may challenge for cause any person offering to vote whom the elector knows or suspects is not a qualified elector." However, the injunction does not interfere with these challenge procedures insofar as the procedures allow inspectors and electors to challenge a voter's qualifications. That is, the injunction does not prohibit anyone from challenging a voter on the ground that he or she is not a U.S. citizen residing in Wisconsin who is age 18 or older, or on the ground that he or she is disqualified from voting. *See* Wis. Stat. §§ 6.02, 6.03 (establishing qualifications for electors and grounds for disqualification). The injunction thus does not interfere with § 6.925 at all, and it interferes with § 6.92(1) only to the extent that it prevents inspectors from challenging a person who submits an affidavit in lieu of an ID on the ground that he or she did not produce an ID. Moreover, nothing in my order prevents an inspector or another elector from challenging a voter on the ground that the voter is not the person he or she claims to be. Under the order, only the sufficiency of the reason given by the voter for being unable to obtain ID is not subject to challenge. Accordingly, the injunction interferes with Wisconsin's challenge procedures only as much as is necessary to provide the plaintiffs with effective relief.

Finally, I address the defendants' argument under *Purcell v. Gonzalez*, 549 U.S. 1 (2006). That case is generally cited for the proposition that courts should be reluctant to issue orders affecting a state's election procedures when an election is imminent. The rationale underlying this proposition is that orders issued very close to an election may "result in voter confusion and consequent incentive to remain away from the polls." *Id.* at 4–5. However, the November election is more than three months away, and as I explained in my opinion granting the injunction, it will not be difficult for the defendants

6

to implement the affidavit option in time for that election.  Indeed, the defendants have already begun to implement the affidavit option.  *See* Wis. Elec. Comm'n Mem. re: Photo ID Litigation (July 20, 2016), available at http://goo.gl/yJdEGp (viewed July 29, 2016).  Thus, the risk of voter confusion is very low.  That low risk does not outweigh the risk of irreparable harm to the plaintiffs that would arise if the affidavit option were not available for the November election, especially once the plaintiffs' strong likelihood of success on the merits is factored into the balance, as it must be. *See In re A&F Enters., Inc. II*, 742 F.3d at 766.

For these reasons, **IT IS ORDERED** that the defendants' motion for a stay pending appeal is **DENIED**.

Dated at Milwaukee, Wisconsin, this 29th day of July, 2016.

                                      s/ Lynn Adelman
                                      _____
                                      LYNN ADELMAN
                                      District Judge