# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JUSTIN LUFT, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TONY EVERS, in his official capacity as Governor of the State of Wisconsin, et al.,<br><br>Defendants. | Civil Action no. 2:11-cv-01128(JDP) |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE WISCONSIN LEGISLATURE'S MOTION TO INTERVENE

On December 13, 2011, more than a dozen eligible Wisconsin voters filed a lawsuit alleging that 2011 Wis. Act 23—the "voter ID law"—infringed on their constitutional right to vote. *Frank v. Walker*, No. 11-cv-1128 (E.D. Wis. Dec. 13, 2011) (Dkt. 1). The Complaint named as Defendants the Governor of Wisconsin, state elections officials and employees, and, significantly for this case, the Secretary of the Wisconsin Department of Transportation ("DOT") and officials and employees of DOT's Division of Motor Vehicles ("DMV"). Plaintiffs alleged, *inter alia*, that the law and DMV rules and policies imposed an undue and unconstitutional burden on their ability to obtain the ID necessary to vote in Wisconsin. Since that day—nearly nine years ago—the Wisconsin Department of Justice, and only the Wisconsin Department of Justice ("WisDOJ"), has represented the Defendants. *See, e.g.,* Dkt. 27[1] (Answer to Complaint

---

[1] All citations to "Dkt." in this Memorandum of Law refer to the docket in *Luft v. Evers*, No. 11-cv-1128 (E.D. Wis.).

for all Defendants, filed by WisDOJ attorneys). WisDOJ has defended this case through a bench trial, extensive motion practice, three appeals to the Seventh Circuit, and a petition for certiorari.[2]

Now, after nearly a decade of litigation and with the Seventh Circuit ordering relief limited to an investigation and evaluation of DMV's Identification card Petition Process ("IDPP") for voters who lack the documents normally required to obtain ID, *Luft v. Evers*, 963 F.3d 665, 680 (7th Cir. 2020), the Wisconsin Legislature decides it wants to intervene in this case. It did not seek to intervene in 2011, when the case was filed. It did not seek to intervene for trial in 2013 or in 2014 after an adverse trial court decision. It did not seek to intervene in December 2018, when its concerns over the then-incoming Attorney General's willingness to defend the photo ID law led it to call an extraordinary session and pass laws regarding photo ID and laws constraining the Attorney General's power. It did not even seek to intervene in March 2020, when its now-cited "evidence" of the AG's purported unwillingness to defend the law arose.

Thus the request to intervene is untimely, meritless and imprudent. The Legislature cannot establish any of the federal requirements for intervention as of right and provides no justification for further complicating these proceedings shortly before a national election. The

---

[2] *See, e.g.*, *Frank v. Walker*, 17 F. Supp. 3d 837 (E.D. Wis. 2014), *stay granted*, 766 F.3d 755, (7th Cir. 2014), *recons. denied*, 769 F.3d 494 (7th Cir. 2014), *stay vacated* 574 U.S. 929 (2014); *rev'd*, 768 F.3d 744 (7th Cir. 2014), *reh'g. en banc den'd*, 773 F.3d 783 (7th Cir. 2014), *cert. denied*, 575 U.S. 913 (2015); and *on remand*, 141 F. Supp. 3d 932 (E.D. Wis. 2015), *vacated in part*, 819 F.3d 384 (7th Cir. 2016); and *on remand*, 196 F. Supp. 3d 893 (E.D. Wis. 2016), *stay pending appeal denied*, 2016 WL 4059226, (E.D. Wis. July 29, 2016), *order stayed*, 2016 WL 4224616 (7th Cir. Aug. 10, 2016), *en banc review den'd*, 835 F.3d 649 (7th Cir. 2016); *aff'd in part, rev'd in part sub nom*, *Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020).

Legislature's belated request will absolutely prejudice Plaintiffs as they attempt to quickly resolve the limited outstanding issues. Considered more broadly, granting the Legislature's request under these circumstances would create a far-reaching procedural nightmare, effectively giving the Legislature *carte blanche* to intervene in any case alleging violations of federal voting rights at any time it choses regardless of the actual representation already provided by the WisDOJ or others in the case.

Nor should this Court permit discretionary, permissive intervention. There is simply no need to muddle this case by adding additional representation to already adequately represented interests. Beyond question, adding parties through intervention makes litigation more cumbersome and reduces the possibility of resolution. *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 507-08 (7th Cir. 1996). And especially in this case—with an already near-decade-long procedural history—such risks are acute and should not be undertaken lightly. In short, this Court should unequivocally deny the Wisconsin Legislature's Motion to Intervene to avoid "the intractable procedural mess that would result from the extraordinary step of allowing a single entity, even a state, to have two independent parties simultaneously representing it." *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 801 (7th Cir. 2019) ("*Kaul*").

## ARGUMENT

Federal Rule of Civil Procedure 24 governs all requests to intervene in federal court proceedings. "The right to intervene 'is a purely procedural right and even in a diversity suit it is the Federal Rules of Civil Procedure rather than state law that dictate the procedures, including who may intervene, to be followed.'" *Kaul*, 942 F.3d at 797. This is true regardless of the Wisconsin state laws that the Legislature claims endow it with an unqualified right to intervene.

3

Case 2:11-cv-01128-jdp    Filed 08/14/20    Page 3 of 14    Document 358

Dkt. 348 at 6 (citing Wis. Stat. §§ 13.365, 803.09(2m) (2018)).[3] Whether or not there may be circumstances under which the Legislature is permitted to effectuate such an outcome in state court, the Seventh Circuit has held, also citing Wis. Stat. §§ 13.365, 803.09(2m), that those state laws do not "displace" the federal requirements for intervention. *Kaul*, 942 F.3d at 797 (citations omitted). Indeed, in cases such as this one involving federal constitutional challenges, "[t]he supremacy of federal procedure is even more pronounced." *Id.* Applying Rule 24 and binding Seventh Circuit precedent, it is abundantly clear that Wisconsin's requested intervention is unjustified.

## I. The Legislature Is Not Entitled to Intervene as of Right.

To intervene as of right under Rule 24(a), the Wisconsin Legislature must "meet four elements: '(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action.'" *Kaul,* 942 F.3d at 797 (quoting *Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir.), *cert. denied*, 140 S. Ct. 82 (2019)). *"*The proposed intervenor has the burden of establishing all four elements; the lack of even one requires that the court deny the motion." *Id.* The Legislature, however, has not carried its burden of establishing any of the required elements of intervention of right. *Id.*

Attempting to bypass these stringent requirements, the Legislature has invented a conflict between itself and the WisDOJ that does not exist in this case, relying on conduct in *other*

---

[3] The Legislature overreaches when it says that the Seventh Circuit "relied" on a specific observation with respect to Wis. Stat. § 803.09 when deciding *Democratic Nat'l Comm. v. Bostelmann*, No. 20-1538, 2020 WL 3619499 (7th Cir. Apr. 3, 2020). The Seventh Circuit's unpublished analysis of the district court's denial of intervention consisted of a single sentence granting the legislature standing to purse that appeal.

4

cases—most of which do not involve the photo ID law, and none of which involve DMV's actions—to justify its belated attempt to intervene in *this* case just before a national election. But the Legislature's failure to show that it interests are compromised in *this* case by the *current representation* dooms their motion.

### A. The Untimely Request to Intervene Prejudices Plaintiffs.

Four factors inform the timeliness of a motion to intervene, "(1) the length of time the intervenor knew or should have known of his interest in this case; (2) the prejudice caused to the original parties by the delay, (3) the prejudice to the intervenor if the motion is denied, and (4) any other unusual circumstances." *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019). It was the Legislature's obligation to "move promptly to intervene *as soon as* it kn[ew] or ha[d] reasons to know that its interests *might* be adversely affected by the outcome of the litigation." *City of Chicago*, 912 F.3d at 986.

Without question, any request to intervene in this case—continuously defended by the WisDOJ for nearly nine years, *supra* n.1—is untimely. Despite extensive litigation beginning in 2011, the Legislature has never before sought to intervene. The Legislature attempts to pin its motivation for intervention on concerns that arose with the "change in administration at Wisconsin DOJ," contrasting it with the "prior administration," which "vigorously defended the State's voter ID Petition Process." Dkt. 348 at 2. But if that is the case, then the Legislature knew or should have known that its interests "*might* be adversely affected" when the new Attorney General was elected in November 2018. Indeed, the Legislature's *actual* awareness of as much is reflected by that fact that, in December 2018, the Legislature called an "Extraordinary Session" where it passed legislation codifying the IDPP and constraining the litigation authority and decision-making of the Attorney General and WisDOJ, as well as the very laws, Wis. Stat.

§ 13.365 and § 803.09(2m), that it now uses to justify its attempt to intervene. *See, e.g.,* 2017 Wis. Act 369 §§ 5, 26, 27, 30, 91, 97, https://tinyurl.com/y62u4v52; *see also* 2017 Wis. Act 369, Legislative Council Memo, 1-5 (Dec. 16, 2018), https://tinyurl.com/y3eotbfg (describing the changes made by 2017 Wis. Act 369). There can be no serious question, then, that by December 2018 the Legislature knew that its interests regarding both the photo ID law and the Attorney General's actions "*might* be adversely affected." *City of Chicago*, 912 F.3d at 985 (emphasis in original). The Legislature, however, did not move to intervene at that time, *i.e.*, "as soon as . . . [it] kn[ew] or ha[d] reason to know" of the purported potential impairment of its interests. *Id*.

Nor did the Legislature even seek to intervene in March 2020, when its objections to WisDOJ's litigation strategy in other, distinguishable cases arose and when it moved to intervene in the other lawsuits that it now uses to justify intervention here. *Democratic Nat'l Comm. v. Bostelmann*, No. 3:20-cv-249, Dkt. 9 (W.D. Wis. Mar. 19, 2020) (Notice by Prospective Intervenor Wisconsin State Legislature); *see also City of Green Bay v. Bostelmann*, 1:20-cv-479, Dkt. 13 (E.D. Wis. Mar. 25, 2020); Dkt. 348 at 11 (conceding the Legislature knew that its interests were at risk "in March or April of this year"). Rather, the Legislature waited in the wings in this case, failing to move for intervention until July.[4] Dkt. 348 (filed July 29, 2020).

The Legislature attempts to justify its extensive delays by wrongly asserting that Judge Adelman lacked jurisdiction to consider its intervention motion while the Seventh Circuit appeal

---

[4] The Legislature's claim that it did move to intervene in the Seventh Circuit because it did not want to "burden" the Seventh Circuit's resources rings especially hollow in light of the fact that that it ultimately did move the Seventh Circuit to intervene—in July. *See* Dkt. 348 at 12. The Seventh Circuit effectively rejected that application as untimely given the Legislature could no longer pursue any relief before it by the time the Legislature made its request. *Luft v. Evers*, No. 16-3003, Dkt. 100 (7th Cir. July 6, 2020). The reality is that the Legislature made the *strategic choice* not to pursue relief earlier because of its other "interest" in a speedy resolution of the case before the Seventh Circuit, *id.*, but such tactical decisions cannot excuse its untimely application here.

was pending. Dkt. 348 at 11. However, the appeal concerned a preliminary injunction, and both discovery and motion practice continued while the appeal was pending. *See generally* Dkt. 296-341.

Especially in light of "the fast-approaching November election," Dkt. 348 at 5, the Legislature's unjustified delay fails to satisfy its burden of proving that it timely acted. Contrary to the Legislature's characterization, Dkt. 348 at 9, permitting it to intervene at this hour, after a near "decade of litigation in the federal courts," will inflict real and substantial "prejudice" on "the other parties to the litigation." *Reid v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1018 (7th Cir. 2002). The Legislature has not participated in the years of discovery in this case, including discovery of many thousands of pages of documents conducted while the appeal was pending. *See* Dkt. 340 ¶¶ 6, 8 (Sept. 1, 2017) ("To date, Defendants have produced over 118 gigabytes of data in discovery."). That the Seventh Circuit instructed this Court to ascertain the current functioning of the IDPP does not, as the Legislature implies, Dkt. 348 at 9, mean that this issue is starting from the beginning. To the contrary, the Legislature's lack of baseline knowledge and experience will inevitably delay this long-running litigation. *Reid*, 289 F.3d at 1018.

Moreover, inserting the Legislature while the WisDOJ continues to actively defend the case could result in the two taking "inconsistent positions on any number of issues . . . from briefing schedules, to discovery issues, to the ultimate merits of the case." *Kaul*, 942 F.3d at 801. That also will clearly delay the litigation. With election day "fast[] approaching," Dkt. 348 at 9, *any* delay is inexcusable and intolerable. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (cautioning that "[c]ourt orders affecting elections, . . . can themselves result in voter confusion and consequent incentive to remain away from the polls," a risk that increases "[a]s an election draws closer").

### B. The Wisconsin Department of Justice Is Adequately Representing Defendants.

To obtain intervention as of right, the proposed intervenor must meet its burden of proving that no existing party adequately represents his interest. Fed. R. Civ. P. 24(a)(2). The importance of the inadequacy-of-representation requirement cannot be understated. *Solid Waste Agency of N. Cook Cnty.*, 101 F.3d 503 at 507-08.

The Seventh Circuit has a "three-tiered structure" for analyzing the adequacy of representation, depending on the context of the case. *Kaul*, 942 F.3d at 799. The Legislature cites and applies the inapplicable first tier of this structure, which permits an intervenor to establish inadequacy by showing that the representation "'may be' inadequate" in cases where the current representation and the proposed intervenor have divergent goals. *Id.*, Dkt. 348 at 15. The second tier establishes a "rebuttable presumption of adequate representation that requires a showing of 'some conflict' to warrant intervention" where the parties share the same goal. *Kaul*, 942 F.3d at 799. The third tier creates a presumption that the current "representative party is . . . an adequate representative" where "the prospective intervenor and the named party have 'the same goal'" and the current "representative party 'is a governmental body charged with protecting the interests of the proposed intervenors,' . . . ." *Id.* As the Seventh Circuit recently made clear, this third tier "sets a nearly insurmountable bar." *Driftless Area Land Conservancy v. Huebsch*, No. 20-1350, ___ F.3d ___, 2020 WL 4592147 at *4 (7th Cir. Aug. 11, 2020).

Here, the third tier is plainly the applicable standard because the WisDOJ is "charged by law with protecting the interests of the proposed intervenors," *i.e.*, defending the constitutionality of the voter ID statute, and the WisDOJ and the Legislature share the same goals. *Id.* Moreover, the Attorney General and the WisDOJ are "charged by law" with protecting the Legislature's proffered interests "in the enforcement of its laws." *Id.* (quoting *Heldgeland v. Wis.*

8

*Municipalities*, 745 N.W.2d 1, 24 (Wis. 2008)). Indeed, as the Wisconsin Supreme Court has repeatedly recognized, "it is the attorney general's *duty* to defend the constitutionality of state statutes." *State v. City of Oak Creek*, 605 N.W.2d 526, 533 (Wis. 2000) (emphasis added) (quoting *State Pub. Intervenor v. Wis. Dep't of Nat. Res.*, 339 N.W.2d 324, 327 (Wis. 1983)) (emphasis added). Moreover, in *this* action, the WisDOJ and the Legislature "have the same objective—ensuring the validity of Wisconsin law." *Kaul*, 942 F.3d at 801. Thus, this case fits squarely within the "line of cases involving intervention motions by . . . other units of government that hold identical or closely aligned interests and objectives as existing governmental parties." *Driftless Area Land Conservancy*, 2020 WL 4592147 at *5. Accordingly, the presumption of adequacy applies, which the Legislature can overcome only with a showing of "gross negligence of bad faith." *Kaul*, 942 F.3d at 801 (quoting *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007)).

Rather than engage with this standard, the Legislature's brief pretends as if the "gross negligence" or "bad faith" standard does not exist. But that requirement does exist, and the Legislature has not and cannot show either gross negligence or bad faith by the WisDOJ in this action. Indeed, the Legislature has not pointed to a single example of anything less than vigorous representation in *this* litigation. Nor could it. As noted above, WisDOJ has represented the very interests the Legislature claims here for close to a decade. *Supra* n.1.

The Legislature offers no evidence to the contrary. Instead, it *speculates* that the WisDOJ will stop defending the IDPP process by claiming that the "current Wisconsin DOJ administration has refused to defend the State's election laws in *other* recent cases." Dkt. 348 at 2 (emphasis added). However, as Defendants have already highlighted, the Legislature is simply wrong about WisDOJ's actions in those other cases. *See, e.g.,* Dkt. 354 at 13-16. The Legislature

is instead quibbling over the state's litigation strategy. For example, the Legislature takes issue with the Attorney General's strategic decision to rest on arguments made during a hearing rather than filing a separate brief. Dkt. 348 at 3. But a disagreement with the Attorney General's litigation tactics does not itself establish inadequate representation. *See, e.g.*, *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013). Proof of far more egregious conduct would be necessary to make that showing. *See, e.g.*, *United States v. Bd. of Sch. Comm'rs*, 466 F.2d 573, 575-76 (7th Cir. 1972) (rejecting proposed intervenors' claim that the defendant school board inadequately represented proposed intervenors' interests because the school board "failed to assert [proposed intervenors'] interests as vigorously and effectively as [they] would have had they been parties to the litigation").

This, of course, is even more true when, as here, the quibbles have nothing to do with decisions involving a case before this Court, but rather with actions taken in entirely separate litigation, little of which involves the photo ID law at all and none of which involves the IDPP.[5] For example, the Legislature complains about WisDOJ's decision not to seek state Supreme Court review of the Governor's effort during the early days of the pandemic to delay the April 7 election, Dkt. 348 at 4, a matter which of course has nothing to do with photo ID, much less with IDPP. By contrast, *this* case is on remand solely to address compliance with the IDPP. *Luft*, 963 F.3d at 680. Not one of the cases relied on by the Legislature even names any DOT or DMV

---

[5] *See, e.g., Democratic Nat'l Comm. v. Bostelmann*, No. 20-1538, 2020 WL 3619499 at *1 (7th Cir. Apr. 3, 2020) (describing case as "challenging various aspects of the state's primary election . . . in light of shelter-in-place orders issued by the governor due to the COVID-19 crisis"); *City of Green Bay v. Bostelmann*, No. 20-C-479, 2020 WL 1492975, at *1 (E.D. Wis. Mar. 27, 2020) (seeking modification of absentee voting procedures in light of the pandemic); Dkt 349-6 at 29 ("The *DNC* and *Edwards* plaintiffs seek to enjoin enforcement of the proof of identification requirements to obtain absentee ballots set forth in Wis. Stats. §§ 6.86(1)(ac) and 6.87(1)."). The IDPP is codified at Wis. Stat. § 343.50(1)(c).

official or employee as a Defendant, nor do any address the core matter at issue on remand in this case: the operation of the IDPP. And contrary to the Legislature's unsubstantiated claim, Dkt. 348 at 14, whatever WisDOJ's actions in other cases, there is no evidence whatsoever that WisDOJ has declined or will decline to defend the IDPP.

### C. The Legislature Has No Unique Interests in this Suit.

For purpose of Rule 24(a)(2), an "interest" in the litigation must be one that is "unique" in that it "must be based on a right that belongs to the proposed intervenor *rather than* an existing party in the suit." *Kaul*, 942 F.3d at 798 (quoting *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985) (emphasis added). The Legislature's interests in defending state law are not exclusive to the Legislature, but shared with the current Defendants in this litigation and their attorneys.

Implicitly acknowledging as much, the Legislature attempts to manufacture a "unique" interest in the IDPP, making the conclusory assertion that IDPP refers to a right that does not belong to any of the existing parties in the suit. Dkt. 348 at 15. That is clearly incorrect: the parties have been litigating the issue of the processes by which the DMV does or does not issue ID cards since this case was filed. *See, e.g.,* Dkt. 1 at ¶¶ 56-71; Dkt. 31 at ¶¶ 68-93. Moreover, the IDPP was explicitly at issue in the 2016 litigation, raised by Plaintiffs and defended by WisDOJ. *See, e.g.,* Dkt. 279 at 8 (Plaintiffs raising concerns about "the DMV petition process instituted after trial (known as the 'IDPP' in internal documents)," in their Motion for a Preliminary Injunction); Dkt. 285 at 18-19 (Defendants defending IDPP in response to Plaintiffs' Motion for a Preliminary Injunction). That the Legislature does not even mention the prior litigation regarding the IDPP simply reaffirms Plaintiffs' concern, *supra* Sec. I.A., that their intervention will also unreasonably delay this case.

Thus, even assuming that Wis. Stat. § 803.09(2m) gives the Legislature *an* interest in this suit, there is nothing about the Legislature's interest in this litigation that is *different* from Defendants', as required by the carefully calibrated requirements of Rule 24(a)(2).

### D.  Any Interest the Legislature Has Is Not in Jeopardy.

Even accepting for the sake of argument that the Legislature has a sufficiently unique interest at stake in *this* litigation, the Legislature has not and cannot establish that the current litigation "may *as a practical matter* impair or impede the [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). As the Legislature indicates, "the *State* has a strong interest in defending the validity of those [election] laws." Dkt. 348 at 14 (emphasis added). But as discussed in detail in Part I.B., the State, through the WisDOJ, is in fact defending the validity of the IDPP, and there is no indication whatsoever that will cease. Where, as here, prejudice to a proposed intervenors' interests is speculative, that counsels against intervention. *State v. City of Chicago*, 912 F.3d 979, 988 (7th Cir 2019). Because the entire claim that WisDOJ will not defend this law is purely speculative, rather than based upon any action whatsoever by WisDOJ in the cases before this Court, the Legislature does not meet its burden of proof on this factor.

## II.     Permissive Intervention Should Be Denied.

Federal Rule of Civil Procedure 24(b) allows for permissive intervention where a proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention under this rule is "wholly discretionary." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). But, before granting permissive intervention, the Court "must consider whether the intervention will unduly delay or prejudice adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Additionally, the Court may weigh "the elements of intervention as of right as discretionary

factors." *Kaul*, 942 F.3d at 804. Denial of permissive intervention will be "affirmed so long as the 'decision shows a thorough consideration of the interests of all the parties.'" *Id.* (quoting *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 776 (7th Cir. 2007)). In sum, permissive intervention leaves the district court with ample authority to manage the litigation before it. *Id*. at 803. The court can even place conditions on the scope of permissive intervention, allowing more voices to be heard without overcomplicating the case with additional claims, defenses, discovery, and conflicting positions." *Id.*

As discussed *supra* Part I.A., this is a time-sensitive case that should not be forced to undergo more delay and complications, especially when the interests of the Legislature remain well represented. Indeed, a proper weighing of "the various parties' interests" reveals the "practical complications" that will necessarily result from the State having two representatives at the same time easily surpass any "value the Legislature" could "add[] to the Attorney General's representation of the State." *Kaul,* 942 F.3d at 804. The Legislature's involvement will present at best duplicative arguments and issues, will introduce confusion about who represents the State, and will force the parties to engage in discovery, motion practice, and trial with additional parties unnecessary to the resolution of the claims, thus needlessly raising costs, delays, and complications throughout all stages of this litigation— impeding the very purpose of Rule 24(b). *See City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 987 (7th Cir. 2011) ("Rule 24(b) is just about economy in litigation.").

In light of these burdens, the *only* way permissive intervention could be manageable would be "if the Legislature is willing to accept conditions, however strict, that would reduce any disruption to levels the court will tolerate—perhaps even as stringent as allowing it only to file amicus briefs and oppose any consent decrees." *Kaul*, 942 F.3d at 804.

13

# CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court deny the Legislature's motion to intervene in this case.

Dated this 14th day of August 2020,
Respectfully submitted,

/s/ Karyn L. Rotker

| | |
|---|---|
| DALE E. HO<br>T. ALORA THOMAS<br>SOPHIA LIN LAKIN<br>American Civil Liberties Union Foundation, Inc.<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>(212) 549-2693<br>dale.ho@aclu.org<br>athomas@aclu.org<br>slakin@aclu.org<br><br>NEIL A. STEINER<br>Dechert LLP<br>1095 Avenue of the Americas<br>New York, NY 10036<br>(212) 698-3822<br>neil.steiner@dechert.com<br><br>CRAIG G. FALLS<br>Dechert LLP<br>1900 K Street NW<br>Washington, DC 20006<br>(202) 261-3373<br>craig.falls@dechert.com<br><br>ANGELA M. LIU<br>Dechert LLP<br>35 West Wacker Drive, Suite 3400<br>Chicago, IL 60601<br>(312) 646-5816<br>angela.liu@dechert.com | KARYN L. ROTKER<br>State Bar No. 1007719<br>LAURENCE J. DUPUIS<br>State Bar No. 1029261<br>American Civil Liberties Union of Wisconsin Foundation<br>207 East Buffalo Street, Suite 325<br>Milwaukee, WI 53202<br>(414) 272-4032<br>krotker@aclu-wi.org<br>ldupuis@aclu-wi.org<br><br>TRISTIA BAUMAN<br>National Law Center on Homelessness & Poverty<br>2000 M Street NW, Suite 210<br>Washington, DC 20036<br>(202) 638-2535<br>tbauman@nlchp.org |